[Sac. No. 573. Department Two.—May 31, 1899.]

ALBERT M. BEMMERLY et al., Administrators, et cetera, Appellants, v. MARY WOODWARD, Executrix, et cetera, Respondent.

Trust under Will—Duty of Executor as Trustee—Investment of Funds—Burden of Proof — Presumption. — An executor who is made by the will a continuing trustee of the estate, and who has in his hands a large sum of money belonging to the estate, is in duty bound to keep the money invested for the benefit of the beneficiaries; and to show an honest execution of the trust it is incumbent on him to show what he did with the money. In the absence of such showing, it must be presumed that he did not use them for the advantage of the trust estate.

Id.—Commingling of Trust Funds—Use for Private Purposes—Compound Interest.—Where it appears that the executor, as trustee, commingled the trust funds with his own in his private bank account, and used them for his own private purposes, whether to his personal advantage or not, and did not invest them for the benefit of the estate, he is properly chargeable with compound interest thereon.

Id.—Death of Trustee—Funds not Earmarked—Estate not Chargeable with Interest.—After the death of the trustee, where the trust funds were not earmarked in the hands of his executrix, the executrix owed no duty to keep the funds invested, and could not pay the demand therefor until presented as a claim and allowed and payment authorized by the court; and no interest thereupon is chargeable against the estate.

Id.—Presentation of Claim after Suit Brought—Matter of Abatement—Waiver.—In an action to enforce the trust against the executrix of the deceased trustee, where the claim against the estate was not presented until after suit brought, but was in fact presented within the time allowed by law, and such presentation was pleaded in a supplemental complaint, the failure to present it before suit brought is mere matter in abatement of the action, which is not favored, and is waived if not set up in answer either to the original or to the supplemental complaint in proper time.

Id.—Loss of Right to Present Claims — Supplemental Answer. — Where there is in fact no loss of right to present the claim, and a plea in abatement has been waived, the court would rarely be justified in permitting the defense to be made later; but if there has been a complete loss of such right by lapse of time, the claim is forever barred, and the executor, in such case, has both the privilege and duty thereafter to urge the point, and is entitled of right to file a supplemental answer if the defense accrued after the issues were made up.

ID.—CLERICAL ERROR IN JUDGMENT—ERROR IN CAPTION—REPRESENTA-
TIVE CHARACTER OF PLAINTIFFS.—Where there is an error in the
caption of the complaint and of the judgment in describing
the plaintiffs both as heirs and administrators, but the body
of the complaint shows that plaintiffs sue in their representative
capacity, and that the estate is not distributed, which facts
are admitted by the answer, an error in rendering judgment
for the plaintiffs individually, instead of in their representative
capacity, is a mere clerical error, apparent upon the face of
the record, which might be corrected at any time.

ID.—SIGNATURE TO JUDGMENT.—The signature of the judge to the judg-
ment does not establish that the error in the judgment is not a
clerical error.

APPEAL from a judgment of the Superior Court of Yolo
County and from orders amending the judgment and denying a
new trial. W. H. Grant, Judge.

The facts are stated in the opinion of the court.

E. B. Mering, A. L. Hart, and Hart & Cleary, for Appellants.

J. C. Ball, for Respondent.

TEMPLE, J.—This is an action against the executrix of a de-
ceased executor to compel an accounting and to recover property
of the estate. The plaintiffs are respectively administrator and
administratrix, with the will annexed, of the estate of Michael
Bemmerly, deceased. The complaint shows that Bemmerly died
in 1877, testate, and leaving an estate of great value.

G. W. Woodward and Henrietta Bemmerly were named in
the will as executor and executrix, and both were appointed and
duly qualified in June, 1877. Mrs. Bemmerly resigned as execu-
trix in 1879, and G. W. Woodward took into his possession the
entire estate, and continued in the exclusive possession thereof
until the twenty-first day of December, 1894, when he died.
While executor he received the rents, issues and profits of the es-
tate, and "thereby made and received large profits."

The will is not set out in the complaint, but it imposed upon
the executors a continuing trust, in addition to the ordinary
duties of executors. The fourth subdivision reads as follows:

"4th. I direct that all the balance of all my real estate of
which I may die possessed shall not be sold or divided, except as
hereinafter provided; that is to say: Whenever one of my chil-

dren becomes of age or it shall be entitled to his or her share of the estate then remaining in the hands of my executors, and they are hereby directed and authorized to deliver up such child's portion by fair division made of the lands then belonging to the estate."

It is charged that on the 2d day of January, 1884, the executor filed his last annual account, which was settled and approved by the court, and from which it appears that he then had in his hands, in cash, seventeen thousand four hundred and thirty-three dollars and seventy-four cents. The estate consisted of a large amount of real estate and personal property, and it is charged that since the above annual account Woodward has made no return, but has rented the land and sold the product, from which he has realized large sums, which he has kept and mingled with his own property.

The complaint contains allegations in regard to specific pieces of real estate, and as to each it is charged that Woodward received rents and profits, which he commingled with his own money. Also statements of profits over and above expenses of each year, showing that at all times since the last annual account rendered, to his death, Woodward had a large amount of money in his hands belonging to said estate. Also that he yearly made sales of grain and other products without any order of court, and never made any report of such sales.

There is also a general averment that all receipts from the estate were commingled by Woodward with his private funds, and were used in his private business, and for his own profit and gain, and have been so used since his death by the defendant, who is his executrix.

The complaint contains no express averment that Woodward neglected to keep the money of the estate invested, as his duty was as trustee.

The amended and supplemental complaint avers the due presentation of a proper claim against the estate of Woodward, but also shows that such presentation and rejection was after the commencement of this action.

The answer admits nearly all the facts stated in the complaint, including the charge that Woodward received the moneys and made large profits from the use and advantage thereof. By a

very generous construction it may be understood as denying that Woodward commingled the funds of the estate with his, or used them in his private business. It is worthy of note, however, that, while the answer admits that Woodward had in his hands for many years large sums belonging to the estate, no investments on behalf of the estate are set out. There is, however, in the complaint a general allegation that Woodward, while executor, acquired other property, from which he received rents and profits, and one piece of property so acquired is specified. The answer also includes a statement of the accounts of Woodward which itself shows that Woodward, at all times since 1884, had on hand large sums of money which he did not invest for the advantage of the estate.

The findings are generally in favor of plaintiffs, but upon the questions of fact principally litigated and discussed they are strangely indistinct and unsatisfactory. The main point of difference at the trial was whether Woodward had mingled the funds of the estate with his private funds and had used the estate money in his own business and for his private advantage. I think it appears by necessary inference from the findings that Woodward did use the money of the estate in his private business, but it is not distinctly so found, nor is there a finding of any special investment made of estate moneys for his own advantage.

The next most important issue was whether Woodward had neglected to invest money in his hands as trustee for the advantage of the trust. There is no express finding upon the subject, but, as in regard to the other matter, I think it appears by necessary inference that the trustee had and held in his hands for years sums of money which he ought to have invested for the advantage of the estate, and did not. Whether such inferences are necessary from the findings is matter of argument, and the most troublesome question presented by the appeal.

It is found that Woodward took possession of the estate, rented the land for one-fourth of the crop; that the yearly crops were placed in the warehouse by the tenants and were sold by Woodward without any order of court, and no report of such sales, or showing receipt of the money, has ever been made. Also that Woodward dealt with the property as his own, and his man-

agement thereof was prudent; also that he kept no account with a bank of the funds of the estate, but had a general account in his own name with the Bank of Woodland, where he deposited his own money and that of the estate, and checked out of this account money for his private use and for current expenses of the estate. At times he drew all the money from the bank, and occasionally the account was overdrawn; and frequently there was less money in the account than the money due from Woodward to the estate. Also that he mingled the funds of the estate with his own and used them indiscriminately.

It does not appear necessarily from this finding that Woodward used the estate money for his own advantage. The evidence shows that during this time Woodward purchased fifty thousand dollars' worth of real estate for himself, and that immediately after each purchase the general bank account was much depleted, and sometimes overdrawn. The findings are, however, strangely silent upon these important matters.

Still, there is a finding which contains a statement of an account from the last annual settlement made in January, 1884. This shows the receipts and expenditures of each year, and that since the year 1884 Woodward had, or should have had, constantly on hand a large sum of money belonging to the estate; and there is no finding that Woodward ever made any investments or loans for the estate. Indeed, it is not alleged that he did so in the answer. At the best the answer only denies that he mingled the funds or used the money of the estate for his private purposes. True, the complaint does not charge distinctly that Woodward, as trustee, neglected to keep the funds invested, so as to earn an income for the beneficiaries, but it is charged that he mingled the trust funds with his own and used them for his private purposes. To show an honest execution of the trust it was incumbent upon Woodward to show what he did with the money. In the absence of such a showing, I think we must conclude that he did not use them for the estate.

The will constitutes the executors trustees, and there was never any settlement of the administration and distribution of the estate to the trustees. Accounts should have been rendered, and the estate managed as required of executors. As the administration was left open because of the trust, Wood-

ward was, of course, responsible as trustee and should have kept the money invested for his beneficiaries.   As he did not do that, but mingled the funds with his own, and even, under the findings, must have occasionally drawn them out of the bank for his own private purposes, I think he was properly charged with compound interest. (Civil Code, sec. 2262; *Estate of Cousins*, 111 Cal. 445; 2 Pomeroy's Eq. Juris., sec. 1076; *In re Hilliard*, 83 Cal. 427.)

In the judgment compound interest was charged up to the death of Woodward, and also against his estate up to the time of the entry of judgment.   It is contended that it was error to allow compound interest since the death of Woodward.   The complaint charges that all the property of the estate, including the money, upon the death of Woodward passed into the possession of the executrix of Woodward, "who continues to hold and use the same, and neglects and refuses to pay over said moneys, or account for the same."   And again, "has been and now is held by said Mary Woodward, as a constructive trust, to account for the same, the interest and profit thereof."   Of course Mrs. Woodward could not as executrix of Woodward's estate assume an active trust in favor of the estate of Bemmerly, nor could she make the estate of Woodward liable for her own personal tort.

The recovery in this case is upon the theory that Woodward had mingled the money of the estate with his own, and that no funds came to the executrix bearing the earmarks of Bemmerly's estate.   Under such circumstances the estate of Bemmerly was required to present a claim to the executrix, and under the law the executrix could not pay the demand until it was allowed and payment authorized by the court.   The executrix owned no duty to the beneficiaries of the trust to keep the money invested, and she could not pay until authorized. The estate was simply indebted in that amount.   Under such circumstances interest could not be charged.   The judgment must, therefore, be modified so that interest will be charged only up to the death of Woodward.

The supplemental complaint avers that the claim for the amount due plaintiffs was duly presented to the defendant as executrix of the estate of Woodward within the time allowed

by law for the presentation of claims, and that it was rejected.
These allegations are admitted in the answer.   Still the com-
plaint itself shows  that the suit was  commenced before the
claim had been presented and rejected.   There was no plea in
abatement, nor was any objection made on this account at the
trial or before judgment.   Although there is some controversy
upon the subject, we will assume that the objection was made
in the statement in the application for a new trial.   Section
1493 of the Code of Civil Procedure provides that all claims
arising upon contracts must be presented within the time lim-
ited; any claim not so  presented is barred  forever.   Section
1498 enacts that, if rejected, suit must be brought within three
months; and section 1500, that no holder of a claim shall
maintain an action thereon, unless the claim is first presented,
except upon mortgage liens.

It is contended that plaintiffs had no cause of action at the
time that the suit was commenced. and such objection may be
made at any time in the trial court, ·although it cannot be
made for the first time in this court.

It has been held, however, that this is a mere matter of
abatement, which is waived unless pleaded.   Formerly, such
pleas could only be interposed before a plea to the merit.
Under our code all defenses may be included in one answer, but
if a defense which is mere matter of abatement is not made by
that time, it should be deemed waived.

In the case of *Hentsch v. Porter*, 10 Cal. 555, it is said: "We
think it clear that the failure to aver the presentment is not
such a fatal objection to the complaint as to make judgment
by default a nullity, or reviewable on appeal."   And, again:
"In this case the objection comes too late.   It must be pre-
sumed, in favor of sustaining the judgment of the district
court, that proof was made of the disallowance of the claim of
the administrator, which supplied the want of averment to that
effect."   (See, also, *Coleman v. Woodworth*, 28 Cal. 568; *Bank
of Stockton v. Howland*, 42 Cal. 129; *Drake v. Foster*, 52 Cal.
225; *Preston v. Knapp*, 85 Cal. 559.)   In these last cases it is
merely said that the objection cannot be made for the first time
in this court, and *Hentsch v. Porter*, *supra*, is cited as authority.
That was sufficient to dispose of those cases, but the rule was

not so limited, nor do those cases suggest the reason for the rule. It is fully shown in *Hentsch v. Porter, supra*. It is simply matter of abatement—a defense which is not favored, and must be made by plea, and in proper time, or it is waived. If so waived the court will be rarely justified in permitting the defense to be made later. In this case if the defense had been promptly made, plaintiffs could have dismissed their suit and brought another. But if, after three months had elapsed after the claim was rejected the point could be successfully urged, plaintiffs would have lost their right of action.

If, however, the time for the presentation of claims had wholly elapsed before or after suit brought, and the claim had not been presented, it would have been a different matter. Then the claims would be forever barred, and it would be both the privilege and the duty of the executrix to urge the point. And she would be entitled, as matter of right, to file a supplemental answer, if the defense had accrued after the issues had been made up. It is clear that the defense was waived in this case.

The next point of importance urged is that the judgment as first entered was void, and the amendment made while the motion for a new trial was under consideration wholly unauthorized, and, therefore, also void. Perhaps the objection is *felo de se*, for if the first attempt to enter judgment was a total failure, there was, as matter of law, no judgment until the amendment, for the first time, made it valid. The point is that in the judgment, as first entered, it was decreed that "Albert M. Bemmerly and Nettie E. Vickroy do have and recover," while they could only recover, if at all, in their representative capacities.

In the caption to the judgment the plaintiffs are described as "Heirs of and Administrators of the Estate," et cetera. This entitling of the case, which, so far as it has any significance, shows an impossible case, and which also affects the complaint, has bred this unnecessary trouble. Of course, no one could think for a minute that the heirs of Bemmerly and the administrators of his estate could join in such a complaint, although by special statute they are permitted to join in certain cases. The pleader probably had some doubt as to the proper parties be-

cause of the additional trust imposed upon the executor by the will, but surely plaintiffs could not, in the same complaint, and by the same allegations, allege rights which, to a certain extent, are inconsistent with each other. One theory implies that a distribution of the estate has been had; the other, that the estate has not been distributed.

In the body of the complaint, however, it is plainly stated that plaintiffs sue in their representative character, and their appointment and qualification as administrators is set out, and these allegations are expressly admitted in the answer. The claim presented is alleged to have been presented by them in their representative capacity; and it is further averred that the estate has not been distributed.

Under these circumstances I think it plainly appears upon the face of the record that the entry of the judgment for the individual plaintiffs was a clerical mistake, and that the correction was proper at any time, and defendants are not aggrieved thereby. It does not follow that it was not a clerical error because the judgment is signed by the judge.

It seems to be admitted that it was error to compound the interest with the principal on July 10, 1897. This is relatively an unimportant matter, but can be corrected without a new trial.

If there was error in fixing the compensation of Woodward, as trustee, in my judgment, such error was to the advantage of defendant. It may well be doubted whether anything should have been allowed, considering the manifest abuse of his trust on the part of Woodward.

I think the partial grant of a new trial sufficiently defines the issues to be retried. Of course, if upon such retrial a new judgment is necessitated, it must be entered. It cannot be supposed that the court has directed a retrial of the issue without the power to determine the issue upon the evidence to be taken.

The trial court is directed to modify the judgment in regard to the allowance of interest, in accordance with this opinion, and further, should it be rendered necessary by the new trial ordered.

Henshaw, J., and McFarland, J., concurred.

Hearing in Bank denied.