[L. A. No. 851. In Bank.—November 15, 1902.]

# FRANCISCO ELIZALDE, an Incompetent, by his Guardian, C. A. THOMPSON, Respondent, v. ELIZA P. ELIZALDE, Administratrix of the Estate of Marcos A. Elizalde, Deceased, (substituted for Ernest Graves, Administrator,) Appellant.

TRUSTS—IDENTITY OF FUND—COMMINGLING BY TRUSTEE—RIGHTS OF CESTUI QUE TRUST.—The rule that the identity of a trust fund, consisting of money, may be preserved so long as it may be followed and distinguished from other funds, does not mean that the trust fund is to be kept as a separate and independent fund, or in a special account, apart from all other funds of the trustee. Though the identical pieces of .coin cannot be ascertained, yet if there is so much belonging to the trust in a general heap of private and trust funds, the *cestui que trust* is entitled to take so much out.

ID.—MONEY DRAWN BY TRUSTEE—PRESUMPTION.—If the trustee, after so mingling the funds, has drawn therefrom from time to time, it will be presumed that the moneys so drawn were from his own portion of the fund, rather than from the moneys held by him in trust; and so long as the amount in the mingled fund is greater than the amount of the trust fund, it will, in the absence of any showing to the contrary, be presumed to be that held in trust.

ID.—DEATH OF TRUSTEE—PRESENTATION OF CLAIM—RECOVERY OF TRUST FUND.—Upon the death of the trustee, leaving the trust fund in his possession, the presentation of a claim against his estate is not required in order that the beneficiary may recover the trust fund from his administrator. The trust fund is no part of the estate of the deceased trustee.

ID.—TRUST UNDER WILL—ACKNOWLEDGMENT BY EXECUTORS—VOLUNTARY TRUST—ESTOPPEL.—Where a fund was left in trust by the will of a deceased person for the care and support of an incompetent person, and the executors acknowledged in writing that they had received for his benefit ''the sum of one thousand dollars in gold coin, being the amount devised by the will of said deceased,'' etc., which was signed by them both as executors and as guardians of the incompetent person, the acknowledgment is sufficient to create a voluntary trust, and the executor who held the control of the fund is estopped to dispute the receipt of the money as a trustee.

ID.—ACTION TO RECOVER TRUST FUND—PLEADING—PROBATE OF WILL—ACKNOWLEDGMENT BY TRUSTEE.—It is not necessary in an action by the guardian of the incompetent person brought in his name to recover the trust fund from the estate of the deceased executor

who held the trust fund to plead or prove the decree of probate of the will under which the original trust was established. It is sufficient to show that the deceased trustee acknowledged that he received the money from the estate upon a trust specified in the will.

ID.—LETTERS OF GUARDIANSHIP — INFERENTIAL AVERMENT — APPOINTMENT—QUALIFICATION.—Where the complaint by the guardian of the incompetent person alleged an order duly given and made appointing him as guardian of the plaintiff, and that he duly qualified as such guardian, there is an inferential averment of letters of guardianship, which will be held sufficient after judgment in the absence of demurrer. Reversal for lack of formal allegations that might have been supplied by amendment are not favored after trial on the merits.

ID.—INTEREST UPON TRUST FUND.—Interest cannot be allowed upon the trust fund from the date of the acknowledgment of the trust and the reception of the fund by the deceased trustee; and could only be charged against his estate for his willful or negligent omission to invest the trust money as a voluntary trustee. It could not be charged after his decease against his administrator, who is an involuntary trustee, bound only to preserve the fund and not to invest it.

ID.—PRESENTATION OF CLAIM FOR INTEREST.—A claim for interest for failure of the deceased trustee to invest the trust fund cannot be allowed, unless a claim for such interest has been presented against his estate.

APPEAL from a judgment of the Superior Court of Santa Barbara County and from an order denying a new trial. B. T. Williams, Judge presiding.

The main facts are stated in the opinion rendered in Department One. Further facts are stated in the opinion rendered in Bank.

Graves & Graves, William Graves, J. J. Boyce, and B. F. Thomas, for Appellant.

Richards & Carrier, for Respondent.

HENSHAW, J.—Upon the former hearing in this case, in Department One, the principal, and indeed the sole, argument of appellant was addressed to the proposition that, as the trust fund was not earmarked, plaintiff was relegated to the position of a general creditor of the estate, who should have presented his claim with other creditors, and that hav-

ing failed so to do, the judgment should be reversed. It was to this contention that the opinion of the court in department was addressed. Upon petition for rehearing new points were presented, to which the attention of this court was invited, and it was urged that, owing to the failing health and serious illness of the administrator, himself an attorney, and the attorney who then prosecuted the appeal, the interests of the estate of Elizalde had not been preserved, and that therefore a rehearing should be permitted and the case considered anew. The rehearing was accordingly ordered.

A re-examination of the question considered upon the former hearing serves but to confirm us in the conviction that the views there expressed, and the determination reached, are sound, and that opinion is therefore adopted and affirmed. Addressing ourselves to the new questions urged upon appeal, it may be said that under the evidence it does not lie in the appellant's mouth to dispute the receipt by her intestate of the thousand dollars. The fund was left in trust for the care and support of the incompetent son of Maria Elizalde. Marcos Elizalde acknowledged the receipt of this money in writing, as follows: "We, M. A. Elizalde and J. J. Elizalde, hereby acknowledge that we have this day received for the benefit of Francisco Elizalde the sum of one thousand dollars gold coin, being the amount devised by the will of said deceased to Francisco Elizalde, as expressed in article 5th of said will. (Signed) M. A. Elizalde, J. J. Elizalde, Executors of the will of Maria Ygnacia Elizalde, and as guardians of Francisco Elizalde." "A voluntary trust is created, as to the trustee, by any words or acts of his indicating, with reasonable certainty, his acceptance of the trust, or his acknowledgment, made upon sufficient consideration, of its existence, and the subject, purpose, and beneficiary of the trust." (Civ. Code, sec. 2222.) Here is a sufficient acknowledgment of the trust, with specific reference to the will of the mother, from which the terms of the trust can be ascertained. It matters not whether in fact one thousand dollars in gold coin came into the hands of these executors under the trust, or whether, for their convenience in the settlement of the estate, they took other real and personal property without converting enough of it into gold coin to comply strictly with the provisions of the will. They either

took the gold coin or its equivalent, and if for any of the purposes of the trust it be necessary or desirable to hold that it was gold coin, their own declaration and acknowledgment will estop them and their successors in interest from disputing the fact. Moreover, it appears that up to the time of his death Marcos Elizalde repeatedly acknowledged that he held this fund in trust for the respondent's benefit, and that his brother, the co-executor, never had anything to do with its custody or management.

Appellant further insists that the complaint fails to state a cause of action, because the judgment whereby the will of Maria Ygnacia Elizalde was admitted to probate is not pleaded. But it was unnecessary to plead that decree. He shows enough when he establishes, as he does, the acknowledgment of Marcos Elizalde that he has received money from the estate of his mother upon a trust specified in her will.

It is urged further that the complaint does not plead the issuance of letters of guardianship to the guardian of the incompetent plaintiff herein. The allegation of the complaint is: "That on said fourth day of June, 1892, the said superior court, by its order duly given and made, appointed said C. A. Thompson as guardian of the plaintiff, with the usual powers, and thereafter and on the sixth day of June, 1892, the said C. A. Thompson duly qualified as such guardian." In *Whyler* v. *Van Tiger,* 14 Pac. Rep. 846, this court held that where a mother was appointed guardian of the person and estate of her minor son, and on the same day presented her bond, which was approved, a lease made by her of the ward's property on the following day was valid, though no letters of guardianship had been issued to her, and she had not taken the oath of office. That case goes much further than is necessary for the present consideration. It is at least pleaded that he duly qualified. Reversals for lack of formal allegations that might have been supplied by amendment are not favored after trial on the merits. (*Cushing* v. *Pires,* 124 Cal. 663.) And where a necessary averment has been only inferentially pleaded, it will be held sufficient after judgment and in the absence of demurrer.

The trial court erred in allowing interest upon the trust fund from the date of the acknowledgment of its reception by Marcos Elizalde. It was undoubtedly the duty of Marcos

to have invested the trust money received by him, and for his willful or negligent omission so to do he is chargeable with interest. (Civ. Code, secs. 2261, 2262.) It is also true that upon the death of Marcos the trust devolved upon his personal representative. (*Tyler* v. *Mayre,* 95 Cal. 160.) "In the United States the heirs or executors will take the trust property, and they must settle the accounts of the testator in relation to the trust. They must also see that the property is protected and preserved." (Perry on Trusts, 4th ed., sec. 344.) But while it thus becomes the duty of the personal representative to preserve the trust funds, in common with the other funds which have come into his possession, still he is in a sense an involuntary trustee upon whom the burden is cast, and is excepted by section 2250 of the Civil Code from the obligation of investing these funds, an obligation which is cast upon the voluntary trustee. (*Estate of Marre,* 127 Cal. 132.) The reason is plain. It may often happen that an executor or other personal representative takes possession of funds which may be proved to be trust funds without any knowledge that such is the fact. Not knowing the fact, it would be his duty to resist, on behalf of the heirs, legatees, and creditors of the estate, any attempt to deprive it of a part of its assets, and in the event of his failure it would be in the last degree inequitable to hold him accountable for interest upon trust funds which he believed to be part of the estate his duty called upon him to administer. But in the case at bar plaintiff lays claim to the specific sum of one thousand dollars, earmarked so as to be identified and proven to have been turned over with the assets of the estate to the administrator Graves, now deceased. For the recovery of this specific sum of money plaintiff has had judgment. If the estate of Marcos, however, is indebted to him in any further sum for interest, by reason of the negligent failure or refusal to invest the *corpus* of the trust, his right to a recovery for this additional amount could only follow and be based upon the presentation of a proper claim for it against Elizalde's estate. Interest, therefore, should not have been allowed.

In the original action Ernest Graves was sued as administrator, and the judgment rendered provided that the money should be paid "in due course of administration." It seems

to have been contemplated by the judge that no personal responsibility rested upon Graves for the payment of the money, and that he had received and was holding it in the belief that it was a part of the assets of the estate of Elizalde. Respondent is not complaining of the form of the judgment, nor, so far as the rights of Ernest Graves are concerned, can we perceive how he suffers injury under it. Respondent might have been heard to insist that the money identified as the trust fund should be paid over to him forthwith, without waiting the delay of administration and the chances of the estate's insolvency. With the death of Ernest Graves, however, and the substitution of Eliza P. Elizalde as administratrix of the estate of Marcos Elizalde, and as appellant here, the situation has become complicated. There is nothing in the record now before us to show that Eliza P. Elizalde has ever come into the control of the trust fund, or is in any way responsible therefor, and the affirmance of the judgment with the indicated modifications under these circumstances might prove barren of results to respondent. The judgment must therefore be reversed, to the end that the trial court, upon proper pleadings, and with the necessary parties before it, may enter the proper judgment in the premises, and that judgment should be for the amount of the trust fund without interest.

It is ordered accordingly.

McFarland, J., Harrison J., Van Dyke, J., and Garoutte, J., concurred.

Temple, J., dissented.

The following is the opinion rendered on the former hearing in Department One, October 11, 1901:—

HARRISON, J.—Under a decree of distribution in the estate of Maria Ygnacia Elizalde, made February 23, 1882, Marcos Elizalde received the sum of one thousand dollars, to be held in trust for the use and benefit of the plaintiff herein, and gave a written acknowledgment of the receipt of the same. He died November 30, 1891, and a document purporting to be his last will and testament was admitted to

probate and an executor thereof appointed January 30, 1892. The order admitting the will to probate was afterwards vacated and annulled, and the defendant herein was appointed administrator of the estate of said deceased. The present action is brought to recover from the defendant the one thousand dollars held in trust by his intestate. The court found that the deceased received the said sum of money in trust, as aforesaid, and continued to hold the same in trust for the plaintiff until his death; that the executor of his will received from his estate funds charged with said trust, greater in amount than sufficient to pay the same; that upon the annullment of the will said executor turned over the same to the defendant herein, and that the defendant still holds the same. Judgment was rendered in favor of the plaintiff, and the defendant has appealed therefrom and from an order denying a new trial.                                            -

At the trial the written acknowledgment in 1882 by the deceased of the receipt of the money was offered in evidence, and also testimony that about a year before his death he had stated to the witness that he had received a thousand dollars for the plaintiff from his mother's estate, and then had the same in his possession. Thompson, who was the executor appointed under the will, testified that, as executor, he had received a thousand dollars held in trust by the decedent for the plaintiff. It was also shown by the final account of the executor that the sum of $13,500 had come into his hands in cash from said estate, and that this amount included the sum of one thousand dollars to be paid to the guardian of the plaintiff. In the decree settling this account the executor was directed to pay this thousand dollars to the administrator, "without prejudice to the right of the guardian to take any lawful means for the collection of said sum." It also appeared from the first account filed by the defendant, as administrator of the deceased, that he had received the amount so directed to be paid to him by the executor. No evidence controverting any portion of the testimony above given was offered in behalf of the defendant, and the evidence before the court fully justified it in making the above findings.

It is, however, contended on behalf of the appellant that unless the plaintiff could identify the specific trust fund held

by the deceased from the general assets of his estate, he can assert only the claim of a creditor, for which he must present his claim for allowance against the estate, and that such identification was not made. In *Lathrop* v. *Bampton,* 31 Cal. 17, it was said: "The identity of a trust fund consisting of money may be preserved so long as it may be followed and distinguished from all other funds, not by identifying the individual pieces or coins, but by showing a separate and independent fund or value, readily distinguishable from all other funds." And again: "If at the time of his death the defendant's testator was in the possession of the trust fund, or other property into which he may have converted it, and such fund or other property had come into the possession of the defendant, he would have held it upon the same terms as his testator held it." This does not mean that the trust fund is to be kept as a separate and independent fund, or in a special account from all other funds of the trustee. In Lewin on Trusts, \*894, it is said, in reference to the mingling by the trustee of trust funds with his own: "It may be said that the trust money has, like water, run into the general mass, and become amalgamated, and therefore the *cestui que trust* has no lien. But clearly this cannot be maintained. . . . Though the identical pieces of coin cannot be ascertained, yet, as there is so much belonging to the trust in the general heap, the *cestui que trust* is entitled to take so much out." And again: "If a trustee pay trust money into a bank to the account of himself, not in any way earmarked with the trust, and also keep private moneys of his own to the same account, the court will disentangle the account and separate the trust from the private moneys, and award the former specifically to the *cestui que trust.*" If the trustee, after so mingling the funds, has drawn therefrom from time to time, it will be presumed that the moneys so drawn were from his own portion of the fund, rather than from the moneys held by him in trust. (*In re Hallett's Estate,* L. R. 13 Ch. Div. 696; *National Bank* v. *Insurance Co.,* 104 U. S. 54; Lewin on Trusts, \*895.) So long as the amount in the fund is greater than the amount of the trust fund it will, in the absence of any showing to the contrary, be presumed to be that held in trust. Whether the moneys are mingled in one

account at a bank or are kept together in the strong box of the trustee is immaterial.

The presentation of a claim against the estate was not required in order to maintain an action to recover property held in trust by the decedent. It is only where payment of a claim is sought out of the assets of the decedent's estate that such presentation is necessary. But property held by the decedent in trust is not a part of his estate, and cannot be applied in satisfaction of his debts, or form a portion of his estate to be distributed to his heirs. (*Theller* v. *Such,* 57 Cal. 447; *Roach* v. *Caraffa,* 85 Cal. 436; *Byrne* v. *McGrath,* 130 Cal. 316.[1])

The judgment and order are affirmed.

Garoutte, J., and Van Dyke, J., concurred.