134 Cal.App.3d 256 (1982)
184 Cal. Rptr. 511
Estate of GEORGE W. DOWNING, Deceased.
SECURITY PACIFIC NATIONAL BANK, as Administrator With the Will Annexed, etc., Petitioner and Appellant,
v.
DOROTHY SWEET DOWNING, as Co-executrix, etc., et al., Objectors and Appellants.
Docket No. 63704.
Court of Appeals of California, Second District, Division Four.
July 23, 1982.
*260 COUNSEL
Zetterberg & Zetterberg and Stephen I. Zetterberg for Petitioner and Appellant.
Allard, Shelton & O'Connor and Keith S. Walker for Objectors and Appellants.
OPINION
LUROS, J.[*]
This is an appeal by Security Pacific National Bank (hereinafter the bank), as administrator with will annexed, from two orders[1] of the Los Angeles Superior Court, sitting in probate, which constitute the final order and decree of distribution in an estate. There is a cross-appeal by the executrices of the will of the original executor of the estate, now deceased, who was the residuary beneficiary thereunder. The issues raised by both the appeal and cross-appeal raise matters that, primarily, represent exercises of discretion by the trial court. Because we find no clear abuse of that discretion, we affirm the trial court as to the issues raised by both the appeal and cross-appeal.

*261 STATEMENT OF FACTS
George W. Downing, Sr. (hereafter Sr.) died testate on November 22, 1948. His son, George W. Downing, Jr. (hereafter Jr.), an attorney, was appointed executor of the will in propria persona on December 17, 1948, but died on September 2, 1978, without completing the probate of the estate. On Jr.'s death, Sr.'s grandson, Michael Downing, also an attorney, discovered the file of the unfinished estate among his father's papers.
A petition was submitted by the bank seeking to be appointed as special administrator. Michael Downing petitioned to have either the bank or himself appointed as administrator with will annexed.[2] The co-executrices of the Jr. estate opposed the bank's petition and sought to have one of them, specifically Marion D. Allin, appointed administrator. After a contested hearing, the court appointed the bank as administrator on November 29, 1978, and letters of administration were issued on January 17, 1979, and are still in effect.
The original inventories of the assets of the Sr. estate, one of which was never filed by the original executor, showed 1948 values totaling $126,850.53. Although no order of distribution was ever granted, by the time of the bank's appointment all of the personal property in the estate had been dissipated leaving only 10 parcels of real property having a 1948 appraisal value of $79,000. While in 1948 all 10 parcels had structures on them, on the date of Jr.'s death 5 of the 10 were bare. The appraised value of these properties as of September 2, 1978, was $475,000.
On August 31, 1979, the bank filed a petition for preliminary distribution and instructions regarding Michael Downing's legacy[3] and for compensation to the bank for extraordinary services in the amount of $3,400 as well as for attorney's fees in the sum of $6,000 for 86 billable hours. The Jr. estate opposed the petition. Trial on the petition was completed November 9, 1979, except as to the legacy, which portion was bifurcated and tried December 7, 1979. The court allowed the bank *262 and its counsel $1,500 each as extraordinary fees. On May 27, 1980, the court entered its decision that Michael Downing was entitled to his legacy, less a portion that he had previously received, plus interest thereon for a total of $11,059.50. Counsel for the Jr. estate filed a timely request for findings of fact and conclusions of law but none were ever provided by the court.
The bank also filed a preliminary report and accounting on August 31, 1979, covering the period from October 19, 1978, to August 17, 1979. This accounting and report had to be taken off calendar on October 19, 1979, because it reflected $47,546.76 worth of personal property in the original inventory which had never been received by the administrator. The report, however, did show collection of rent and other receipts by the bank; expenditures for such items as taxes, repairs and upkeep; and cash on hand in an amount insufficient for taxes, expenses and a reserve to pay the legacy.
The bank received offers of $330,000 to purchase one parcel of the estate property situated in Santa Monica. These offers were communicated to counsel for the Jr. estate who replied that his clients did not wish to sell that particular parcel and suggested that some of the vacant lots be sold instead to secure the funds necessary to pay the expenses of administering the Sr. estate. The bank thereupon published notices of sale on four parcels and obtained, subject to confirmation, sales contracts totalling $46,760 on property valued at $20,500 as of September 2, 1978. The Jr. estate objected to the sales and on October 19, 1979, a hearing was held with the bidders being present. Although the court indicated it was inclined to permit the sales, it declined to do so upon finding that there was sufficient cash in the Jr. estate to meet the anticipated costs of closing the Jr. estate.[4]
The first and final account and petition for approval, extraordinary fees and final distribution came on for hearing on July 7, 1980. In the petition, the bank summarized its work in marshalling the assets of the estate, collecting revenue, and arranging for the sales. The attorneys for the bank showed that they had expended an additional 121 hours of work on the estate since May 3, 1979.
On December 19, 1980, the court issued its order approving the first and final accounts and reports of administrator with will annexed and *263 determining certain extraordinary fees and commissions. The court calculated both the ordinary commissions for the administrator and the attorney's fees based on the values set forth in the 1948 inventory for an award of $2,843.07 as to each. The court further ordered that the administrator's commission was to be apportioned between Jr. and the bank, such apportionment to be decided at a subsequent hearing. However, the court found that inasmuch as Jr. was a lawyer acting in the dual capacity of personal representative and his own attorney, he was not entitled to compensation for his legal services and, therefore, the attorneys' fees were not to be similarly apportioned. The court also denied the bank's claim for extraordinary compensation finding that the great bulk of the bank's efforts were within the ordinary duties of an administrator for which he receives ordinary compensation and that these endeavors did not result in any great benefit to the estate. Similarly, as to counsels' request for $16,313 in extraordinary fees, the court found that the services performed by counsel fell within the scope of services for which ordinary fees are paid. Therefore as to both the bank and counsel, the court found adequate the $1,500 previously awarded each as extraordinary compensation and fees.

ISSUES ON APPEAL
1. Whether statutory compensation should be computed using the 1948 appraised values of the real property administered or those values appraised in 1978 on the death of the original executor.
2. Whether there is inequity in the statutory fees based on the 1948 values so as to require the award of extraordinary compensation under the rule of Estate of Lampman (1940) 15 Cal.2d 212 [100 P.2d 448] and Estate of Allen (1941) 42 Cal. App.2d 346 [108 P.2d 973].
3. Whether the services rendered by the bank and its attorneys entitle the bank to the extraordinary compensation denied by the court.
4. Whether the executor's estate is entitled to any fees at all under the circumstances of this case and given that it has been surcharged.

ISSUES ON CROSS-APPEAL
1. Whether the statutory attorney's fees must be apportioned between the deceased executor and counsel for the bank where the former had *264 been acting as his own attorney and could not have claimed an attorney's fee.
2. Whether the beneficiary of a trust created for an express purpose is entitled to the corpus when the purpose has been fulfilled by the trustee's use of his own funds with which the corpus had been commingled and, if so, whether he is entitled to interest thereon.
3. Whether the appeal is so frivolous as to warrant sanctions against the bank and its counsel.

DISCUSSION OF ISSUES ON APPEAL

A. Statutory Compensation and Fees

(1a) During the course of the hearing on the bank's petition for appointment as administrator CTA of the Sr. estate to replace the deceased executor, the bank's probate officer handling the estate acknowledged that it was his feeling "... that right offhand our fees would have to be based on the original inventory value. I've never heard of the situation where an executor would charge a statutory fee on an estate that may have escalated in value." This statement by the bank's probate officer is in accord with the provisions of the Probate Code relevant to establishing the basis from which to compute statutory compensation and fees (Prob. Code,[5] §§ 600, 901 and 910, subd. (a)).[6] Section 600 provides that the inventory shall be based upon the fair market value of the assets of the estate, such value being that at the time of the decedent's death. Section 901 requires that the administrator's compensation shall be based on the total amount of the inventory with certain prescribed modifications. The principles of statutory construction compel the conclusion that these provisions leave a trial court sitting in probate with no alternative but to compute the statutory administrator's compensation and the equivalent attorney's fees based upon values set forth in an inventory compiled as of the date of the decedent's death.
*265 (2) It is well-settled that statutes that "... are in pari materia ... must be construed together. Accordingly, there being no contrary intention expressed by the Legislature, ... [a word common to two such statutes] must be given the same meaning in each enactment. [Citations omitted.]" Hunstock v. Estate Development Corp. (1943) 22 Cal.2d 205, 210-211 [138 P.2d 1, 148 A.L.R. 968]; see also, 58 Cal.Jur.3d, Statutes, § 127, p. 521. (3) Thus, the word "inventory" as used in both section 600 and section 901 must be similarly defined in each as an appraisal of the items comprising the estate at their value as of the date of death. Moreover, the utilization of the word "shall" in each enactment renders them both mandatory rather than merely directory in nature. (See California Teachers Assn. v. Governing Board (1977) 70 Cal. App.3d 833, 842 [139 Cal. Rptr. 155]: "`"The ordinary meaning of `shall' ... is of mandatory effect, ..."' (People v. Durbin (1963) 218 Cal. App.2d 846, 849 ... (quoting 27A Words and Phrases (permanent ed.) p. 674)....)"
(1b) Being in pari materia and mandatory in nature, when the provision in section 600 that the inventory shall be based on the fair market value as of the date of death is read together with that portion of section 901 requiring that the administrator's commission shall be based on the inventory, the conclusion is compelled that, in the instant case, the trial court was obliged to apply the appropriate statutory formula to the 1948 rather than the 1978 values. This conclusion is further reinforced by the representations of the bank's probate officer to the same effect. As the Supreme Court held in the case of In re Davis Estate (1884) 65 Cal. 309 [4 P. 22]: "It cannot be presumed, however, that in making the promise, under which he obtained his appointment, he intended to practice a deceit upon the court or the estate. Rather it must be presumed, that, as he obtained the appointment upon the faith of his promise, he undertook the administration according to its terms, and with the intention to renounce his claim to the commissions which *266 the law allowed him. There is no question that an executor or administrator, like any other trustee, may renounce his claim to compensation for performance of the duties of his trust, and a promise made by him before his appointment, that he will not charge for his services, may be regarded as equivalent to the renunciation of his claim." (65 Cal. at p. 309.) While the trust officer's statement was more in the nature of an opinion than a promise, the same equitable principles would appear to apply because that observation on the part of the probate officer may well have constituted a condition under which the court granted the bank's petition to be named administrator of the estate. However, it is not necessary to reach this point because of the fact that the statutes pursuant to which the commissions and fees are calculated are mandatory rather than discretionary in nature.
Therefore, given the fact that the provisions of sections 600 and 901, as well as section 910 subdivision (a) by implication, are mandatory rather than directory, we affirm the trial court's determination of the compensation to which the bank and its counsel are entitled.[7]

B. Extraordinary Fees

(4) In the instant case the trial judge granted both the bank and its counsel ordinary statutory fees plus extraordinary fees in the amount of $1,500 but declined to grant the requests for additional extraordinary compensation. This is a matter strictly within the discretion of the trial court. One of the cases relied on by the trial judge in rendering his decision on the accounting and petition of the bank, albeit on the principle of surcharge rather than extraordinary fees, is Estate of Raphael (1954) 128 Cal. App.2d 92, 98-99 [274 P.2d 880]. That case holds: "`The allowance of extraordinary fees is a matter of discretion with the trial court and is not to be interfered with on appeal except for abuse. Such discretion not only invests the trial court with the power to determine whether the character of the services is such as to warrant extra compensation, but to determine the amount.' (Estate of Scherer, [(1943)] 58 Cal. App.2d 133, 142 [136 P.2d 103].)"
*267 The manner in which a trial court sitting in probate exercises its discretion in determining whether to award extraordinary fees, and, if so, the amount thereof, was best described in Estate of Walker (1963) 221 Cal. App.2d 792, 795-796 [34 Cal. Rptr. 832]: "The language of the Probate Code makes it clear that the allowance of fees for extraordinary services rendered in probate proceedings by executors, administrators and their attorneys is discretionary with the probate court. In making an allowance for such services, or in disallowing a claim therefor, the court may take into consideration all matters relating to the administration of the particular estate, such as the value of the estate, the kind and character of the assets, the effort involved in the care and preservation of estate property, and such other facts as bear upon the labor and effort of the executor, administrator and attorney in the routine administration of the estate. Finally, the amount of the ordinary fees to which such persons are entitled under the provisions of sections 901 and 910 may be considered, and if, under all the facts and circumstances bearing upon the administration of the estate, the sum allowed by law as ordinary compensation appears to be adequate, just and reasonable compensation for all services rendered, even though some extraordinary services may have in fact been performed, the probate court may, in the exercise of the discretion conferred upon it by the statute, disallow all claims for extraordinary compensation. (See Estate of Fulton, [(1937)] 23 Cal. App.2d 563, 567 [73 P.2d 664]; Estate of Buchman, [(1955)] 138 Cal. App.2d 228, 235 [291 P.2d 547].) The purpose of the Legislature in enacting sections 902 and 910 was to allow extra compensation to be granted in proper cases, but only where extraordinary services are not adequately compensated by the statutory fees established by section 901."
The bank contends that the trial court denied the request for extraordinary administrator's commission and attorney's fees because the judge was unaware of the existence of section 902 providing for "[s]uch further allowances ... as the court may deem just and reasonable for any extraordinary services." This contention, far from being supported by the record, is manifestly belied by it. Initially, it must be observed that the bank's argument is grounded on an assumption this court is unwilling to make, that the trial judge was unaware of the provisions of section 902. Section 902 is not a statute which came into existence after the trial of this case and, therefore, this case does not present a situation like those before the Supreme Court in Woodland Hills Residents Assn. Inc. v. City Council (1979) 23 Cal.3d 917, 932 [154 Cal. Rptr. 503, 593 P.2d 200] and Rumford v. City of Berkeley (1982) 31 Cal.3d *268 545, 559 [183 Cal. Rptr. 73, 645 P.2d 124] where the trial court neither considered evidence nor made findings regarding fees. Moreover, the bank expressly cited the case of Estate of Walker, supra, in their supplemental brief on fees and the opinion in that case, as is readily apparent from that portion quoted hereinabove, makes specific reference to section 902. (221 Cal. App.2d at pp. 795-796.)
Even more significant, the trial court made an express finding that the services performed by the bank as administrator and its counsel fell within the ambit of ordinary as opposed to extraordinary duties and did not result in any unusual benefit to the estate. Finally, the bank fails to consider the fact that, far from denying extraordinary compensation, the trial court granted such to both the bank and its counsel in the amount of $1,500 apiece. Therefore, this case presents a situation wherein the trial court, after considering the evidence and the arguments of the respective parties, determined to award extraordinary fees and assessed the appropriate amount thereof.
We conclude, as in Estate of Walker, supra, 221 Cal. App.2d at pages 796-797, that "... the judge considered the matter with care, and entered his order only after a careful review of the entire record. We find no abuse of discretion."

C. Apportionment

(5) The bank next contends that due to the malfeasance and misfeasance of the original executor, there should be no apportionment of the statutory administrator's commission.
Section 901 provides that "[i]f there are two or more executors or administrators, the compensation shall be apportioned among them by the court according to the services actually rendered by each." (Italics added.) As noted supra, by utilizing the word "shall" the Legislature has made the portion of the statute providing for apportionment mandatory rather than merely directory. (California Teachers Assn. v. Governing Board, supra, 70 Cal. App.3d at p. 842.) But even if this provision were to be deemed discretionary, the trial court must be given the opportunity to exercise that discretion. As the statute makes clear, it is for the trial court, rather than this court, to ascertain what services were actually rendered by each administrator and to apportion the administrator's commission accordingly. As with fees, the trial judge is best equipped to make this determination. (See Serrano v. Priest (1977) 20 *269 Cal.3d 25, 49 [141 Cal. Rptr. 315, 569 P.2d 1303]; Inmates of Sybil Brand Inst. for Women v. County of Los Angeles (1982) 130 Cal. App.3d 89, 114 [181 Cal. Rptr. 599].) While it might have been preferable to undertake this assessment as part of the proceedings on the final accounting and distribution, there is authority for leaving the question of apportionment open to future determination. (Kelly v. Conroy (1928) 91 Cal. App. 350, 355 [266 P. 1022].)

ISSUES ON CROSS-APPEAL

A. Allowance of Executor's Commission Rather Than Attorney's Fees to Lawyer Acting as Administrator in Propria Persona

(6) Cross-appellants candidly admit that an executor who is a lawyer and is acting in propria persona cannot collect both his commission as executor and attorney's fees. They also concede that "[t]he normal rule is that an Executor who is also an attorney is entitled to the Executor's commission but not to the attorney's fees." They argue, however, that in exceptional circumstances the court may allow for the executor-attorney to elect to receive attorney's fees in lieu of his commission.
Cross-appellants cite Estate of Lankershim (1936) 6 Cal.2d 568, 573-574 [58 P.2d 1282] for this proposition. Lankershim is distinguishable from the case at bench given that at the time he was appointed, the executor in Lankershim, with the consent of all of the parties, waived his commission and agreed to seek only such compensation as might be allowed as attorney's fees. Because of their consent, the appellants were held to be estopped from objecting. However, even assuming for the sake of argument that this case does stand for the proposition advanced by cross-appellants, it would nonetheless be a matter left to the sound discretion of the trial court. Based on Estate of Walker on which cross-appellants have placed such reliance we resolve all intendments in favor of the trial court's exercise of discretion. Abuse of discretion not being presumable and there being no evidence of such abuse (Estate of Turino (1970) 8 Cal. App.3d 642, 644 [87 Cal. Rptr. 581]), particularly in light of cross-appellants' concession, we find proper the action of the trial court in restricting the original executor to a portion of the administrator's commission, as opposed to permitting him to share in the attorney's fees awarded.

*270 B. The Distribution to Michael Downing

(7a) Cross-appellants urge that the trial court erred in approving the distribution of the corpus of the Michael Downing trust to the named beneficiary because, the purpose of the trust having been fulfilled, the trust ceased pursuant to Civil Code section 2279 and its proceeds should have reverted to the residual beneficiary of the estate. It is further asserted that even if the trial court was correct in allowing Michael Downing to receive the corpus of his trust, it erred in awarding him interest therein inasmuch as the decedent died before 1959 and, therefore, he was not entitled to the benefits of the 1959 amendment to section 162 providing for interest on general pecuniary legacies in trust. (8) As cross-respondent, the bank urges the finality of the order for preliminary distribution (§ 1001) based on the claim that cross-appellants' notice of appeal was untimely and the failure to make Michael Downing a party to this appeal.[8]
Addressing the issue of the timeliness of cross-appellants' appeal from the order of preliminary distribution regarding the Michael Downing legacy, we note that section 1001 conditions an order for preliminary distribution on it appearing to the court "... that all of the allegations of the petition are true, that the estate is but little indebted and the legacy, devise or share of the estate or any portion thereof may be distributed without loss to the creditors or injury to the estate or any person interested therein." Thus, it is clear that "[t]he court must make findings as to the ultimate facts that are prerequisite to a preliminary distribution." (25 Cal.Jur.3d, Decedents' Estates, § 871, p. 349; see also Estate of Fields (1949) 94 Cal. App.2d 233, 236 [210 P.2d 247].) While it is true, as the bank contends, that the necessary findings need not be formally set forth in a separate document but may be contained in the preliminary distribution order itself (ibid; see also Estate of Ruben (1964) 224 Cal. App.2d 600, 607 [36 Cal. Rptr. 752]), a careful reading of the decision with respect to claimed legacy of Michael Downing fails to reveal any of the foundational findings necessary to a preliminary distribution pursuant to section 1001.
Thus, cross-appellants are correct that the order regarding the distribution of the legacy to Michael Downing was not appealable until set *271 forth in the first and final account given the failure of the trial court to make findings despite cross-appellants' timely request therefor. (Cal. Rules of Court, rule 232(b); see Estate of Shaffer (1968) 268 Cal. App.2d 522, 524 [74 Cal. Rptr. 39].)
(7b) Upon making an independent review of that portion of Sr.'s holographic will pertaining to the bequest of $4,000 in trust for Michael Downing's education as well as the trial court's decision as to that legacy, we find no error in the court's ruling that he was entitled to both the corpus of the trust and interest thereon. Cross-appellants are correct in their contention that by virtue of the provisions of Civil Code section 2279,[9] a trust ceases when its object has been realized. However, their conclusion that this results in a reversion of the corpus of the trust into the residuary of the estate reads too much into the statute. (9) "When the objects of a trust have been fully performed the title of the trustee ceases and the legal as well as the equitable title vests in the beneficial owner unless the intention of the creator clearly appears that the legal title should continue in the trustee." (Ball v. Mann (1948) 88 Cal. App.2d 695, 699 [199 P.2d 706].) (7c) There being no such clear showing of the testator's intent in the instant case, the trial court properly directed the payment of the remaining balance of the trust to Michael Downing.
(10) Nor are cross-appellants correct in their assertion that the awarding of interest to Michael Downing as regards his legacy was erroneous on the grounds that the law, prior to the 1959 amendment to section 162, did not provide for interest on "general pecuniary legacies in trust." It is true that the amendment was expressly made inapplicable to the estates of persons dying before its effective date (Stats. 1959, ch. 1882, § 3). However, the prior state of the law was that it merely "... was unclear regarding ... the payment of interest on general pecuniary legacies in trust (1957 Conference of State Bar Delegates, Resolution 8)" (34 State Bar J. (1959) p. 728). Moreover, the trial court did not base its interest award solely upon section 162. Rather, as the trial court expressly found, interest with regard to the Michael Downing legacy is also authorized by Civil Code section 2262 which provides that "[i]f a trustee omits to invest the trust moneys according to ... section [2261], he must pay simple interest thereon, if such omission is negligent merely, and compound interest if it is willful." As the *272 decision with respect to the preliminary petition correctly observed, this provision is clearly applicable to testamentary trustees. (See Estate of Prior, (1952) 111 Cal. App.2d 464, 470 [244 P.2d 697]; Bemmerly v. Woodward (1899) 124 Cal. 568, 573 [57 P. 561].) Although the record on appeal is silent as to whether the trustee failed to invest these funds at interest as required by Civil Code section 2261, such must be presumed inasmuch as "... all reasonable inferences from the evidence which will uphold the order will be indulged."[10] (Estate of Walker, supra, 221 Cal. App.2d at p. 796.)
Nor was it error for the trial court to award interest for the period subsequent to the trustee's death. Were the claim for interest imposed upon the Jr. estate such an award would be improper inasmuch as his executrices, cross-appellants herein, would be involuntary trustees under no obligation to invest the corpus of the trust and within the ambit of the statutory exemption of Civil Code section 2250.[11] (See Bemmerly v. Woodward, supra, 124 Cal. at p. 573; Elizalde v. Elizalde (1902) 137 Cal. 634, 637-638 [66 P. 369, 70 P. 861].) However, the petition for preliminary distribution in the case at bench and the trial court's order in connection therewith, being directed at the Sr. rather than the Jr. estate, fall outside the ambit of the rule of Bemmerly and Elizalde which are limited in scope to claims made against the estate of the trustee rather than that of the creator. (See 137 Cal. at p. 638.) Inasmuch as the award of interest against the Sr. estate "follow[s] and ... [is] based upon the presentation of a proper claim for it against... estate" (Elizalde v. Elizalde, supra) it was proper to compute the interest so as to include that period subsequent to the trustee's death.
Therefore, we find the award of interest with regard to the Michael Downing Estate was proper.

C. Frivolousness of the Appeal and Sanctions

Given the Supreme Court's recent decision in In re Marriage of Flaherty (1982) 31 Cal.3d 637, 650-651 [183 Cal. Rptr. 508, 646 P.2d *273 179], we are compelled to find that the within appeal is not frivolous and that sanctions are, therefore, not warranted. (11) As the court there observed: "... an appeal should be held to be frivolous only when it is prosecuted for an improper motive  to harass the respondent or delay the effect of an adverse judgement  or when it indisputably has no merit  when any reasonable attorney would agree that the appeal is totally and completely without merit. (See Estate of Walters ... [(1950) 99 Cal. App.2d 552,] 558-559 [222 P.2d 100].)
"However, any definition [of frivolous appeals] must be read so as to avoid a serious chilling effect on the assertion of litigants' rights on appeal. Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win on appeal. An appeal that is simply without merit is not by definition frivolous and should not incur sanctions. Counsel should not be deterred from filing such appeals out of a fear of reprisals ... punishment [for the prosecution of frivolous appeals] should be used most sparingly to deter only the most egregious conduct.
"Viewed under this standard, [the] appeal in this case cannot be deemed frivolous. There is no evidence of subjective bad faith. [¶] ... Although this court has affirmed the trial court, it was not unreasonable for ... counsel [for appellant] to think the issues were arguable. There are at least two sides to every legal dispute, and reasonable attorneys will often disagree about the merits of a particular case. Here, it cannot be said that `any reasonable person would agree that [appellant's arguments are] totally and completely devoid of merit....' (Estate of Walters, supra, 99 Cal.2d at p. 558.) This appeal was not frivolous."
The orders of the trial court which are the subject of the appeal and cross-appeal are affirmed. The request for sanctions is denied.
Kingsley, Acting P.J., and McClosky, J., concurred.
NOTES
[*] Assigned by the Chairperson of the Judicial Council.
[1] The two orders are (1) the order approving the first and final account and report of administrator with will annexed and determining certain extraordinary fees and commissions dated December 19, 1980; and (2) decree of distribution, with jurisdiction reserved for a portion of ordinary fees of administrator with will annexed, and to consider supplemental compensation for work done since submission of accounting dated March 2, 1981.
[2] Michael Downing indicated in his petition that if he were appointed administrator he would designate the bank as probate agent.
[3] This legacy, which was set forth in Sr.'s holographic will, was for a trust of $4,000 to aid Michael Downing in securing a college and professional education. If he failed to undertake such studies, the proceeds of the trust were to be passed on to him on his 30th birthday unless he died prior thereto in which event the money would revert to the residuary of the estate.
[4] The request for compensation for extraordinary services filed on August 31, 1979, did not include the bank's work in attempting to sell this property.
[5] Unless otherwise specified all statutory references will be to the Probate Code.
[6] Those statutes provide in relevant part as follows:

Section 600. "Within three months after appointment ... the executor or administrator shall file with the clerk of the court an inventory and appraisement of the estate of the decedent which has come to the possession or knowledge of the executor or administrator ... The inventory and appraisement shall be prepared in such form as to set down each item separately with the fair market value thereof at the time of the decedent's death in dollars and cents opposite the respective items." (Italics added.)
Section 901. "The commission to which the executor or administrator is entitled pursuant to this section shall be based upon the total amount of the inventory plus gains over appraisal value on sales, plus receipts, less losses on sales, without reference to encumbrances or other obligations on property in the estate, if any." (Italics added.)
Section 910, subdivision (a). "Attorneys for executors and administrators shall be allowed out of the estate, as fees for conducting the ordinary probate proceedings, the same amounts as are allowed by the previous article as commissions to executors and administrators; and such further amount as the court may deem just and reasonable for extraordinary services."
[7] The cases of Estate of Lampman (1940) 15 Cal.2d 212, 219 [100 P.2d 488] and Estate of Allen (1941) 42 Cal. App.2d 346, 353 [108 P.2d 973] relied on by the bank involves no more than allowances for extraordinary fees by the trial court. The issue of extraordinary fees is amply treated in the succeeding section of this opinion and these cases merit no separate discussion.
[8] As to Michael Downing's not being a party to the instant appeal, this contention is wholly without merit inasmuch as the record on appeal establishes that he was served with a copy of the notice of cross-appeal and cross-appellants' designation of record.
[9] Civil Code section 2279 provides that "[a] trust is extinguished by the entire fulfillment of its object, or by such object becoming impossible or unlawful."
[10] It should also be noted in this regard that cross-appellants have admitted that the trustee commingled the corpus of the trust with his own personal funds. (See Estate of McCabe (1950) 98 Cal. App.2d 503, 505 [220 P.2d 614]; Bemmerly v. Woodward, supra, 124 Cal. at p. 573.)
[11] Civil Code section 2250 expressly excludes executors and administrators from the definition of trustees within the scope of the chapter pertaining to trusts for the benefit of third persons.