MINNEHAHA COUNTY, Appellant, v. BOYCE, Respondent.
(138 N. W. 287.)

**1. Limitation of Actions—Support of Insane Persons—Liability of Estate—When Statute Begins to Run—Construction of Statute.**

Under Laws 1895, ch. 98 (Pol. Code, Sec. 544,) concerning maintenance of insane persons in the hospital for insane, out of the estate of such person, and exempting such estate, as to dependent heirs, from liability therefor, and concerning sale of property of such estate to provide a fund for payment of charges incurred by a county for treatment and such maintenance, held, that no cause of action accrued to the county for such maintenance until her death; that the statute of limitations did not commence to run against the county on its claim against the state for such charges incurred until an action would lie to enforce such claim; that, gathering the legislative intent from the language and general purpose of that section, it was the intent not to demand payment out of an "estate" upon which certain heirs might be dependent for support, and not to appropriate any property of such insane person during her life; and, held, further, that not until her death did an "estate" exist which matured the statutory liability; and the trial court erred in holding that payments made by plaintiff county, for such maintenance, more than six years before her death, were barred by the statute of limitations.

**2. Insane Persons—Liability of "Estate" for Maintenance—Dependent "Heirs."**

Under Laws 1895, ch. ,8 (Pol. Code, Sec. 544,) providing for and limiting the liability of the estate of an insane person for maintenance in the hospital for insane, and containing a proviso exempting the estate from such liability as to the interest

of dependent heirs resident in the United States, held, that the statute does not exempt the whole estate where only part of the heirs were dependent on the insane person; the term "estate," as used therein, not being equivalent to "property," and the words "heirs dependent" not being equivalent to "persons dependent," etc.; and where only one heir was so dependent, the remainder of the estate left after such insane person's death was liable to county's claim for maintenance.

Haney, J., dissenting.

(Opinion filed October 25, 1912.)

Appeal from Circuit Court, Minnehaha County. Hon. Joseph W. Jones, Judge.

Action by Minnehaha County against J. W. Boyce, administrator of the estate of Anna C. Phillips, deceased, to recover for the amount paid out by plaintiff for treatment and maintenance of deceased as a patient in the State Hospital for the Insane. From a judgment in part for plaintiff, and from an order denying a new trial, it appeals. Reversed, and remanded for further proceedings.

*Martin Bergh,* State's Attorney, for Appellant.

It will be seen from an examination of Secs. 544, 532, 536, 538 and Subd. 2 of Sec. 2137, Pol. Code, that after such indebtedness has been incurred by a county, it will require several months' time for it to collect and pay the same, if the statutory method is pursued. But Minnehaha county, in common with other counties in the state, anticipates the amount of money that may be required annually to pay for its insane patients in the state hospital, by providing a fund for that purpose every year in its estimates of county expenses in the tax levy for the next year. So the bills of the state auditor are paid promptly upon presentation each quarter. Still, these accounts must naturally overlap each other as to time, and when one quarter has been paid for, another has begun to run, and while a person is confined in the asylum his account is constantly running against the county and there is no space of time when the county is free from debt on his account. Especially will this be true when payments are made but once a year, which is all the law requires.

This account between the county and the state is obviously a continuous and continuing one, beginning with the sending of the insane person to the hospital, and ending with her death, discharge or removal. In the case at bar, Anna C. Phillips was an

insane patient in the state hospital for seven years continuously. The payments made for her by Minnehaha county, while thus cared for, constitute the account between the county and the state, the payment of which by the county is made obligatory upon it by the laws of the state. Neither the personal representative nor the family of the insane person had anything to do therewith, either as to the amount or time of payment. The county could not terminate the obligation or prevent the account from running, and it must continue to run until the death or removal of the patient. The obligation of her estate to now reimburse the county for this expense is a single one, based upon the total amount that had been paid out by the county when its duty ceased. And this obligation does not rest alone upon the dealings between the county and the state as to how and when the county paid the state, but upon the existence of an indebtedness as a whole, validated by law as a claim against the estate. There exists but one right to a recovery for the whole, subject to the other provisions of the statute. See Miner v. Howard, 93 Mo. 569, 67 S. W. Rep. 692.

The plaintiff contends that the statute of limitations applying to an action upon a liability created by statute, cannot be held to begin running until the entire amount of the liability has been established, and that the statute is not applicable to any part of the claim herein sued upon. Whether we figure the date of death of Anna C. Phillips, or the time she left the hospital, as the termination of the county's liability for her proper care, this action was brought in sufficient time to bring the entire claim within the statute. But the statute under which this action is brought does not fix any time when recovery may be had, except at the death of the insane person. Allen v. Stephens, 102 Ga. 596, 29 S. E. Rep. 443; Gilbert v. Taylor, 148 N. Y. 298, 42 N. E. Rep. 713.

No real property of the insane person could be sold during her lifetime, under law; and the proceeds of any personal property sold must be invested by the county judge for her benefit. Presumably such investment shall continue until her death. What attack the county could make upon any cash that the guardian might have belonging to the estate, the law does not provide. It is a fair conclusion to draw from the statute, that the law contem-

plates and intends that the estate of an insane person shall remain intact, as near as may be, until the person's death. Such interpretation of the law will certainly make the county's claim an entire one, the final amount of which is to be satisfied out of the estate of the insane person upon death.

Where a party's right depends upon the happening of a certain event in the future, the cause of action accrues and the statute of limitations begins to run only from the time when the event happens.  25 Cyc. 1067, and cases cited in notes.

These charges of a county in insanity cases often cover a long period of time.  Must the county bring an action every six years and place its claim in judgment in order to be protected against the running of the statute of limitations?  Such course will bring on a multiplicity of suits, which is not favored in law, and subject an estate to unnecessary expenses for attorney fees and costs. In the case at bar, two actions would have to have been brought instead of one.  So the estate is benefitted by making but one claim.  And the judgment or judgments obtained by the county in the interim of the patient's confinement in the state hospital would be of no benefit to it, but must remain unsatisfied until such time as the estate can be reached for their collection.  It cannot be that the law contemplates this, or will permit it.  Walker v. Goodrich, 16 Ill. 341; Lamb v. Hanneman, 40 Iowa 41, 43; Moser v. Crooks, 32 Iowa 172, 176; Miller v. Armstrong, 123 Iowa 86, 98 N. W. Rep. 561; Sayward v. Dexter, 72 Fed. Rep. 758; Toland v. Sprague, 12 Pet. 300; Spring v. Gray, 6 Pet. 156; Kellar v. Jackson, 58 Iowa, 629; Union Bank v. Knapp, 6 Pick. 96; Ramchander v. Hammond, 2 Johns. 200; Gill v. Waterhouse, (Wash.) 175 Fed. Rep. 805; Frankoviz v. Smith, et al. (Minn.) 26 N. W. 225; Big Horn Lumber Co. v. Davis, 14 Wyo. 455; 7 Am. & Eng. Ann. Cases, 947, note; Skyrme v. Occidental Mill Co., 8 Nev. 219; See also: O'Leary v. Burns, 53 Miss. 171; Schmeiding v. Ewing, 57 Mo. 78; Ring v. Jamison, 2 Mo. App. affirmed in 66 Mo. 424; Wendling v. Bessemer, 31 Iowa, 248; Jackson v. Mull, 6 Wyo. 55, 42 Pac. Rep. 603; Carroll v. McCoy, 40 Iowa, 38; Beeler v. Tinnel, 85 Mo. App. 438; Waldron v. Alexander, 35 Ill. App. 319; Graves v. Pemberton (Ind. App.) 29 N. E. 7; Carter v. Carter, 36 Mich. 207; Taggart v. Tevanny (Ind. App.) 27 N. E. 511; Knight v. Knight (Ind. App.) 33 N.

E. 456; Purviance v. Purviance (Ind. App.) 42 N. E. 364; Crampton v. Logan (Ind. App.) 63 N. E. 51; Morrisey v. Faucett (Wash) 68 Pac. 352; Ah How v. Furth (Wash.) 43 Pac. 639; Moore v. Renick, 95 Mo. App. 202, 68 S. W. 936; Catholic Bishop of Chicago v. Bauer, 62 Ill. 188; Eliot v. Lawton, 89 Mass. (7 Allen) 274; Phelps v. Patterson, 25 Ark. 185; Hancock v. Pio-Pico, 47 Cal. 161; Walker v. Goodrich, 16 Ill. (6 Peck) 341; Wells v. Town of Salina, 71 Hun (N. Y.) 559; Jones v. Lewis, 11 Tex. 359; Leake v. City of Cleburne, (Tex. Civ. App.) 36 S. W. 97; Noble v. Bellows, 53 Vt. 527; Rowan v. Chenoweth (W. Va.) 38 S. E. 544; McHarry v. Irvin's Ex'r, 85 Ky. 322, 3 S. W. 374; Cole v. Baker, (S. D.) 91 N. W. 324; McPherson v. Swift, 22 S. D. 165.

Quantum of estate liable is subject to payment of entire claim established.

There are seven heirs to the estate of said insane person, Anna C. Phillips, deceased, all of whom inherit equally, taking one-seventh part each. It is admitted, and so found by the court, that the part of the estate to which one of the heirs, Hattie C. Phillips, succeeds, is not liable in this action, as she has been found to be dependent upon the estate for her support. The other six heirs are liable. The findings of fact herein establishes the fact that they are not dependent upon the estate of said insane person for support. The circuit court decided that only six-sevenths part of the claim of Minnehaha County herein could be collected from the estate by law. This conclusion of the court is clearly erroneous. While one-seventh part of the estate cannot be touched for the collection of this debt, the remaining sixth-sevenths part is certainly liable for the payment of the whole thereof.

The six heirs who are not exempt from the operation of Sec. 544, Political Code, which imposes the liability herein, can make no objection to its collection, and in fact do not make any objection. So, whatever sum is found due and payable for the support of the insane relative, whether the whole sum demanded or the part thereof not excluded by limitation, is a charge in full upon the certain portion of the estate belonging to the heirs who are not exempted by the statute from bearing this obligation.

*Boyce, Warren & Fairbank,* for Respondent.

It is undisputed that plaintiff must recover, if at all, by vir-

tue of the provisions of Section 544 of the Political Code, which reads as follows: "The amount incurred by any County of this State for treatment and maintenance of any insane person in the hospital for the insane shall be a charge against the estate of such insane person. Provided, that the insane person has no heirs within the United States dependent on said estate for support, and that no real property shall be sold during the life of the insane person; and further, Provided, that no personal property shall be sold under five years from the date of the sending of such person to the asylum, unless by order of the court on the death of the insane person or when such property is liable to deteriorate in value during the time above specified, and when sold as above the county judge shall safely invest the proceeds thereof for the benefit of the insane person."

The trial court took the view that, inasmuch as there were six heirs who are not dependent and one dependent heir, the estate was in effect divided into seven parts, six of which would be liable, each for the prorata share of the claim and that the seventh, belonging to the dependent heir, would not be liable.

It seems clear to us that the trial court has construed this section as though it read, "The amount incurred by any County of this State for treatment and maintenance of any insane person in a hospital for the insane shall be a charge against the heirs of such insane person to the extent of the amount inherited from the estate by each heir."

It is evident that the legislature did not intend that any part of the expenses incurred by the County should be taken from the estate in such a way as to decrease the amount which would be inherited by the dependent heir. The County is given the right to be re-imbursed out of the estate of the insane person provided there are no dependent heirs. Th claim of the County is against the estate, and, if the judgment of the trial court is allowed to stand, it must be paid by the administrator out of the estate, and the entire estate will be thereby diminished by the amount of such payment and the share of the dependent heir will be diminished in exactly the same proportion as the shares of the heirs not dependent.

The language of the statute makes no exception; the proviso applies to the entire claim. The statute makes the amount

paid by the County a charge against the estate, if the insane person has no heirs dependent on the estate for support. If there is no dependent heir the payment is made a charge upon the estate. If there is a dependent heir there can be no charge. This is the plain meaning of the proviso. If the legislature had intended that non-dependent heirs should pay pro rata or that the entire claim should be paid out of the shares of the non-dependent heirs, it could easily have said so.

Statute of limitations.

The trial court held that all items paid by the County prior to a date six years before the death of the insane person are barred by the statute of limitations. This finding the plaintiff assigns as error. The sole question therefore, as far as this assignment is concerned, is, when does the statute of limitations begin to run upon the several items in this account.

The defendant contends that the statute commenced to run on each, item at the time it was paid by the County. Sections 60, 64, Code of Civil Procedure; Section 544 of the Political Code.

The first question to consider is whether, apart from the peculiar provisions of Section 544, the statute of limitations would run against the separate items of the account sued upon from the time of their payment by the County.

This question has been decided by this court in the case of McArthur v. McCoy, 112 N. W. 155; 21 S. D. 314.

Our statutes were taken from New York and are identical with those of California. It would not seem necessary to cite authorities in view of the construction already adopted by this court, but, since appellant has cited numerous authorities, we cite the following from New York and California holding that the statute begins to run from the date of each item: In Re Gardner, 9 N. E. 306 (N. Y.); Davis v. Gerton, 16 N. Y. 255; Gilbert v. Comstock, 93 N. Y. 484; Adams v. Ft. Plain Bank, 36 N. Y. 255; Greene v. Disbrow, 79 N. Y. 1; Norton v. Larco, 30 Cal. 127.

The statute, under Sections 59 and 60 must begin to run on items in unilateral accounts at the time each item of indebtedness is incurred.

Section 544 makes the amount incurred by the county a charge against the estate of the insane person, without limitation as to time when the amount paid shall become a charge, hence

each item is due at the time it is paid by the county, unless this construction would be changed by the provisos. The first proviso is that no real property shall be sold during the life of the insane person. This makes it perfectly clear that the word estate, as used in the section, refers to the property of the insane person during his lifetime, for, if the claim was only against the estate of deceased insane persons, there would be no necessity for the proviso, that no real property should be sold during the life of the insane person. This construction is strengthened by the second proviso, "That no personal property shall be sold under five years from the date of sending such person to the asylum," except under certain conditions.

The Legislature has in both these provisos plainly intended not to extend the time of maturity of the claim, but only to provide the time within which property may be sold upon execution to satisfy the claim. Neither of these provisos extends the time of maturity of the several accounts.

It thus appears perfectly plain that there is nothing in Section 544 to postpone the maturity of the several items, but, on the contrary, its provisos plainly negative any such intention. It follows that the provisions of Sections 60 and 64 of the Code of Civil Procedure must determine the running of the statute of limitations on the several items of this account, and as there were clearly no reciprocal demands between the parties, no item of the account comes within the exception in Section 64 and, by the simplest process of elimination, we have excluded all possible exceptions to the provisions of Section 60, that actions upon unilateral accounts upon liabilities created by statute must be brought within six years after each item of liability is incurred. Fraylor v. Sonora Mining Co., 17 Cal. 594; Millet v. Bradbury, 41 Pac. 865 (Cal.); Weatherwax v. Cosumnes Valley Mill Co., 17 Cal. 345; Santa Rosa National Bank v. Barnett, 58 Pac. 85 (Cal.); Adams v. Patterson, 35 Cal. 122.

An examination of the authorities cited by appellant will reveal the fact that any authority which would appear to be in conflict with the decision of this court in McArthur v. McCoy or with the California and New York decisions above cited was under statutes unlike those of South Dakota and generally, if not

universally, in states where there was no provision even analogous to section 64 of our Code of Civil Procedure.

The supreme court of Iowa has decided the precise question now before this court under a statute very similar to ours, in the case of Harrison County v. Dunn, 51 N. W. 155.

We agree with plaintiff's counsel, that the court erred in deciding "that plaintiff is entitled to recover six-sevenths of the sum paid by it during said six years" for as we have shown under our first assignment the complaint of the plaintiff should have been dismissed.

SMITH, J. Action by Minnehaha county against J. W. Boyce, as administrator of the estate of Anna C. Phillips, deceased, to recover the sum of $1,331.20, the amount paid out by the county for the treatment and maintenance of the deceased as a patient in the State Hospital for the Insane, at Yankton, from June 17, 1898, to June 30, 1905. The case was submitted to the trial court upon an agreed statement of facts, upon which the court made findings of fact and conclusions of law February 18, 1912. Only such portions of the findings as are material to the questions presented upon this appeal need be referred to. They are, in substance, as follows: That some time prior to 1897 Anna C. Phillips became insane, and on May 18, 1897, Hattie C. Phillips was appointed guardian of her person and estate by the county court of Minnehaha county; that Anna C. Phillips, upon the petition of her said guardian, was committed to the State Hospital for the Insane, at Yankton, by order of the county court of said county, on the 17th day of June, 1898, and remained in said hospital and received treatment, care, and maintenance therein till the 30th day of June, 1905, when she was removed to a private hospital, where she died as an insane person June 11, 1910; that Anna C. Phillips was, at all times, an unmarried person, without children, and at her death left real property in the said county of a value of at least $6,000, and personal estate of the value of at least $2,500; that Minnehaha county has paid out for care, treatment, and maintenance of Anna C. Phillips at the State Hospital for the Insane, from June 17, 1898, to June 30, 1905, the sum of $1,331.20, which payments were made quarterly each year, in sums of $48, beginning September 30, 1898, and ending June 30, 1905; that an itemized and verified account of such payments

was duly presented to and filed with said administrator on August 17, 1910; that Anna C. Phillips left surviving as her heirs at law five sisters and one brother and her mother, Hattie C. Phillips; that the five sisters and brother of said Anna C. Phillips are not dependent upon the estate of said Anna C. Phillips for their support; that Hattie C. Phillips, the mother, is dependent upon the estate of Anna C. Phillips for her support, and has been at all times, and is now, within the United States.

The court found, as conclusions of law, that the plaintiff is barred by the statute of limitations from recovering any sums or amounts for such support and maintenance paid more than six years immediately preceding the date of the death of Anna C. Phillips, to-wit, June 11, 1910; that one-seventh of the estate of Anna C. Phillips, to which Hattie C. Phillips succeeded as heir of deceased, is not liable for any part of the amount expended by plaintiff, as aforesaid; that the plaintiff is entitled to recover of the defendant, as administrator of the estate six-sevenths of the amount paid by plaintiff for the care, treatment, maintenance, and support of said deceased in said hospital, for the quarters ending June 30, September 30, and December 30, 1904, and March 31 and June 30, 1905, amounting in all to the sum of $188.34, with interest from June 30, 1905.

Plaintiff appeals, alleging the court erred in holding that plaintiff is barred by the statute of limitations from recovering payments made more than six years immediately preceding the death of said insane person, and in deciding that plaintiff was entitled to recover only six-sevenths of the sum paid by it during said six years. Recovery is sought in this action under the provisions of Section 544 of the Political Code, which reads as follows: "The amount incurred by any county of this state for treatment and maintenance of any insane person in the hospital for the insane shall be a charge against the estate of such insane person: Provided, that the insane person has no heirs within the United States dependent on said estate for support, and that no real property shall be sold during the life of the insane person; and further provided, that no personal property shall be sold under five years from the date of the sending of such insane person to the asylum, unless by order of the court on the death of the insane person or when such property is liable to deteriorate in value dur-

ing the time above specified, and when sold as above, the county judge shall safely invest the proceeds thereof for the benefit of the insane person." Other provisions of the law make it the duty of the superintendent to furnish the county auditor of each county a quarterly statement, giving the number of patients from such county, together with the names and cost of maintaince, and require the superintendent to certify to the State Auditor on the 1st day of January, April, July and October of each year the amount due the hospital from the different counties, and that the said Auditor shall place the same to the credit of the hospital and notify the county auditor of each county of such charge, and require the board of county commissioners to levy a tax in each county for the amount, and to pay the amount thus due into the state treasury.

[1] The question presented upon the first assignment of error is: When did the estate of limitations begin to run against the plaintiff's claim? Respondent contends that the statute begins to run as to each item at the time it is paid by the county. Appellant, on the other hand, contends that the statute does not begin to run, under the provisions of section 544 of the Political Code, until the entire amount of liability has accrued at the death of the insane person, and that the statute is not applicable to a part of the claim sued upon.

The rule that no statute of limitations begins to run until such time as an action will lie to enforce the claim is so elementary as to require no citation of authorities. The original enactment for the establishment and government of the hospital for the insane was passed in 1874, since which time it has been many times amended. Chapter 98, Laws 1895, which has since been incorporated as section 544 of our present Political Code, was however an original enactment and not an amendment, and did not affect or in any manner change the then existing law, which is now embodied in the Political Code, relating to the payment by counties of the cost of treatment and maintenance of patients in the hospital for the insane. It was plainly intended to and did create an entirely new and original liability against estates of insane persons not having dependent heirs in the United States. Hence no other provisions of the law of which it now

forms a part afford any aid to the proper interpretation of the language used in the section itself.

The legislative intent, therefore, must be ascertained by a consideration of the language and the general purpose expressed in the section itself. It was plainly the intent not to demand payment out of an "estate" upon which certain persons might be dependent for their support. Such persons are designated as "heirs." This is followed by the express declaration that no real property of the insane person shall be sold during the life of such insane person, and that no personal property of the insane person may be sold under five years from the date when such person became such patient, except upon his death, or when such property may deteriorate in value; and "when sold as above" the county judge is required to safely invest the proceeds for the benefit of the insane person. The language used points unmistakably to the conclusion that the Legislature did not intend that any property of an insane person, real or personal, should be appropriated in satisfaction of the statutory liability during the life of the insane person. The provisions for the protection of dependent heirs, and the placing of the liability upon the "estate," seem conclusive of such intent. It seems clear, therefore, that no cause of action arises until the liability created by the statute becomes effective by the death of the insane person, at which time the "amount" of the liability has become fixed, and the real and personal property of such insane person has become what is known in the law governing the disposition of the property of deceased persons as an "estate." When this "estate" comes into existence, the statutory liability matures and becomes actionable, and from that time the statute of limitations begins to run.

We are of opinion, therefore, that the trial court erred in the conclusion of law that payments made by the plaintiff county more than six years before the death of the insane person are barred by the statute.

[2] The limitation of the liability of such estates to estates of deceased insane patients, having no dependent heirs in the United States, presents a question of much greater difficulty.

The question here persented must depend on the sense in which the Legislature used the term "estate." In many cases the precise meaning of the term "estate" can only be ascertained from

the context or the circumstances under which it is used. In statutes the import of the term depends in a great degree upon its association with other expressions; and the fixed, absolute sense of the word in the abstract must give way to the connection in which it is used. In re Hinckley, 58 Cal. 457; Campbell v. Campbell, 37 Wis. 206. From the context it seems clear that the term "estate," in section 544 of the Political Code, is not used as an equivalent for the word "property" in the popular meaning. Nor are the words "heirs  *  *  *  dependent on said estate" used as equivalent to the words "persons  *  *  * dependent on said estate." The provisos in the section are clearly intended to conserve the property of the insane person during his life-time, and are design-ed to leave the liability of the estate to be determined by the non-existence or existence of dependent heirs at the time of his death, because persons having no legal claim to support, though they might become heirs upon his decease, cannot be said to be dependent upon his estate during his lifetime. The evident purpose of the statute was to create a liability to reimburse the county out of the estate of the decedent which does not pass to dependent heirs, and not to exempt the whole estate where but a part of the heirs are dependent. Such an interpretation of the statute as is contended for by respondents would, in very many cases, wholly defeat the evident purpose of the Legislature, which was to protect the dependent heirs, and at the same time to justly appropriate the estate of the decedent, upon which no heir was dependent, in satisfaction of the claim of the county for reimbursement.

We are clearly of opinion the term "estate" in the statute was used b ythe Legislature, and should be interpreted, in this limite ! sense. The entire claim of the county should be paid out of the "estate" which does not pass to the dependent heir, Hattie C. Phillips. The estate remaining after the payment of such liability would be distributed among nondependent heirs.

The order and judgment of the trial court are reversed, and the case remanded for further proceedings in accordance with this decision.

HANEY, J. (dissenting). In my opinion, the language of the statute is plain and unambiguous. By its express terms, when there is a dependent heir, there can be no charge against any por-

tion of the estate. The trial court should be directed to dismiss the action upon the merits.