MEADE COUNTY, Appellant, v. WELCH et al., Respondents.

(148 N. W. 601.)

1. **Executors and Administrators—"Claim"—Unenforceable in Lifetime—Presentation—Care of Insane.**

A claim of a county for treatment and maintenance of an insane person in the hospital for insane, under Pol. Code, Sec. 544, though unenforceable until after such person's death, is nevertheless a "claim," within Prob. Code, Sec. 170, providing that a claim arising upon contract, and not presented within time limited in notice to file, shall be barred, etc.

2. **Same—Claims—Care of Insane Persons—Trust, Claim Impressed With—Quasi Contract.**

A claim of a county for care of an insane person in state hospital, as against his estate, under Pol. Code, Sec. 544, is in the nature of a quasi contract, and hence, in absence of presentation within the time fixed therefor as to claims against the insane person's estate, cannot be enforced on the theory of constructive trust, no trust being involved therein.

(Opinion filed September 8, 1914.)

Appeal from Circuit Court, Meade County. Hon. WILLIAM
G. RICE, Judge.

Action by Meade County against James K. Welch, as admin-
istrator of the estate of Nezor La Flamme, deceased, and others,
to recover by way of reimbursement for moneys paid to the State
for support of decedent, in his lifetime, as an insane patient.
From a judgment for defendants, and from an order denying a
new trial, plaintiff appeals. Affirmed.

*Claude C. Gray,* and *A. K. Gardner,* for Appellant.

*Schrader & Lewis,* and *James McNenny,* for Respondents.

(1) Under point one of the opinion, Appellant cited:

Purdin v. Archer, 4 S. D. 54; Fish v. Delaray, 8 S. D. 321;
Kelsey v. Welch, 8 S. D. 261; Kline v. Gingery, 25 S. D. 16;
Zimmerman v. Carpenter, 84 Fed. 747.

Respondents cited:

Statute 1903, 1033; Sec. 170, Probate Code; Morse v. Steele
(Cal.) 86 Pac. 693.

(2) Under point two of the opinion, Appellant cited:

Minnehaha County v. Boyce (S. D.) 138 N. W. 287.

Respondents cited:

9 Cyc. 243; Wickham et al. v. Wiel et al., 17 N. Y. S. 518;
Hertztog v. Hertztog, 29 Pa. St. 465; People v. Spier, 77 N. Y.
144; Rhodes v. O'Farrell, 2nd Nev. 60; Minnehaha County v.
Boyce (S. D.) 138 N. W. 287; Secs. 154, 156, Prob. Code.

GATES, J. On May 24, 1893, one Nezor La Flamme, with
his family, resided upon 160 acres of land in Meade county, which
was their homestead. On that day he was declared insane and
taken to the State Hospital for the Insane, where he remained
until his death, on January 2, 1908. After his removal to the
asylum, his wife continued to occupy the homestead until her
death on July 26, 1910. During that period she had no property
of her own, and was dependent upon said homestead for her sup-
port. Nezor La Flamme died intestate and left no other property
than the homestead, which was less than $3,000 in value. At the
time of his death the children were all more than 21 years of age.
On March 1, 1911, defendant Welch was appointed and qualified
as administrator of the estate of Nezor La Flamme. In April,
1911, the notice to creditors was published. On or about March
18, 1912, the administrator filed a petition for the final distribu-

tion of the estate. Without having presented a claim to the administrator, Meade county thereafter brought this action against the administrator and heirs to charge said real estate with its claim for moneys paid to the state of South Dakota for the support of said insane person, amounting, without interest, to $2,808.54, and for an injunction to restrain the distribution of said property. Judgment was entered dismissing the action upon its merits. Therefrom, and from an order denying a new trial, Meade county appeals.

We are of the opinion that this case must be disposed of upon the ground that no claim was presented to the administrator, and therefore the questions as to the homestead right, or as to the dependency of the heirs, or the other questions raised, become immaterial.

[1] Section 544, Pol. Code, provides:

. . . "The amount incurred by any county of this state for treatment and maintenance of any insane person in the hospital for the insane shall be a charge against the estate of such insane person. * * *"

This section has been interpreted by this court in Minnehaha County v. Boyce, 30 S. D. 226, 138 N, W. 287, to mean that no cause of action thereon arises until the liability created by the statute becomes effective by the death of the insane person.. It is therefore argued by counsel for appellant that, inasmuch as no action thereon could have been enforced against the insane person or his property in his lifetime, this is not a "claim" against the estate, within the meaning of section 170, Probate Code, citing Purdin v. Archer, 4 S. D. 54, 54 N. W. 1043, and other decisions of this court. It is true that in Purdin v. Archer, supra, this court quoted with approval certain language from Fallon v. Butler, 21 Cal. 24, 81 Am. Dec. 140, wherein it was said that the word "claim" "has reference to such debts or demands against the decedent as might have been enforced against him in his lifetime by personal action for the recovery of money, and upon which only a money judgment could have been rendered."

The case of Fallon v. Butler, supra, in which that language was used, was one in which a mortgage claim had been presented to the administrator and had been allowed, and it was contended that, because of such allowance, no foreclosure of the mortgage

could be had.   The California court held that a mortgage lien was not a "claim," within the meaning of the probate act, where no money judgment was sought.

The case of Purdin v. Archer, supra, was one where an administrator sought by replevin to recover property of which the mortgagee of the deceased had taken possession by reason of default in the terms of the mortgage.   It was held that the terms of the mortgage were not extinguished by the death of the mortgagor, and that the mortgagee had the right of possession.

In the case of Kelsey v. Welch, 8 S. D. 255, 66 N. W. 390, this court held that, with the exception of a claim for a deficiency, creditors whose claims were secured by mortgage were relieved from the operation of the statute requiring claims to be presented to an administrator.

The case of Fish v. De Laray, 8 S. D. 320, 66 N. W. 465, 59 Am. St. Rep. 764, was an action to foreclose a mechanic's lien.   It was held that, so far as the property subject to the lien was concerned, no presentation of the claim to the administrator was necessary.

The case of Kline v. Gingery, 25 S. D. 16, 124 N. W. 958, was an action for rescission of a contract of sale of a stallion upon the ground of fraudulent representations.   Kline had given his notes therefor, and before Gingery's death had rescinded the contract and made demand for the return of the notes.   The court said:

"As will have been observed in the case at bar, the action was for the purpose of rescinding a contract of sale for the recovery of specific property belonging to the plaintiff, viz., their promissory notes given in purchase of the horse.   Clearly it was unnecessary to present such a claim to the executrix for allowance, as the demand was not a debt due from the estate to them, but the estate had specific property of the plaintiffs which defendant refused to deliver.   It is quite clear that the statute does not contemplate that, before the plaintiffs could maintain their action for rescission, they should be required to again make a demand of the executrix for rescission; they having already made such demand of the deceased."

It was further held that, it being an action in equity, the court had the incidental power to allow judgment for the keep of the

stallion, in spite of the fact that no claim had been presented to the administrator.

While the language quoted in Purdin v. Archer, supra, and adverted to in the other decisions mentioned, is correct as applied to the facts of those cases, yet it can have no application to contracts made by a decedent which were not due prior to his death. General statements in an opinion must be viewed in the light of the facts in each particular case. The situation before the court at the present time is not one which could reasonably have been anticipated when those remarks were approved by this court.

Section 170, Probate Code, reads as follows:

*"If a claim arising upon a contract heretofore made, be not presented within the time limited in the notice, it is barred forever, except as follows: If it be not then due, or if it be contingent, it may be presented within one month after it becomes due or absolute; if it be made to appear by the affidavit of the claimant, to the satisfaction of the executor or administrator and the judge of the county court, that the claimant had no notice as provided in this chapter, by reason of being out of the state, it may be presented at any time before a decree of distribution is entered; a claim for a deficiency remaining unpaid after a sale of property of the estate mortgaged or pledged must be presented within one month after such deficiency is ascertained.* All claims arising upon contracts hereafter made, whether the same be due, not due or contingent, must be presented within the time limited in the notice; and any claim not so presented is barred forever; Provided, however, that when it is made to appear by the affidavit of the claimant, as above provided, that he had no notice by reason of being out of the state, it may be presented as therein provided; Provided further, that nothing in this section, nor in this Code contained, shall be construed to prohibit the right or limit the time of foreclosure of mortgages upon real property of decedents, whether heretofore or hereafter executed, but every such mortgage may be foreclosed within the time and in the mode prescribed by the Code of Civil Procedure, except that no balance of the debt secured by such mortgage remaining unpaid after foreclosure shall be a claim against the estate unless such debt was presented as required by this Code."

The italics are ours.  The portion of this section down to the last proviso appears first as section 140 of the Probate Code of 1877.  An examination of the previous territorial laws fails to reveal any statute in relation to the filing of claims against an estate.  That section seems to have been a copy of section 1493 of the California Code of Civil Procedure, as amended in 1874 (Cal. Code Amendments 1873-74, p. 364).  That section provides for two classes of claims, viz.: (1) Those arising upon contracts made prior to the taking effect of the Dakota Code of 1877.  (2) Those arising upon contracts made after the taking effect of the Code.  In 1881, section 140 of the Probate Code of 1877 was amended by chapter 107, Dak. Laws of 1881, by adding thereto the last proviso above set forth in relation to the foreclosure of mortgages.  In the Revised Probate Code of 1903, section 140, Prob. Code 1877, was re-enacted with the 1881 amendment.  It must be understood that the revision of 1903 was but a continuation of the statutes then in force, and that the first class of claims, as italicized above, still relates to claims arising upon contracts made prior to the taking effect of the Code of 1877, and not to claims arising upon contracts made subsequent to 1877 but prior to the taking effect of the revision of 1903.  This must be so, else claims which were barred in 1902 would have become actionable in 1903.  So for all probable present-day purposes, the non-italicized portion of section 170, Prob. Code, is the existing law in regard to the presentation of claims.  The California law since 1880 has been practically the same as this.  Under it and another section of the California Code, similar to our section 178, Prob. Code, we find several decisions that throw light upon the present question.  In Verdier v. Roach, 96 Cal. 467, 31 Pac. 554, a lessor had entered into a lease with tenants for nine years, and had covenanted to indemnify them for one-half of all damages caused by leakage or overflow of water during the full term of the lease.  The lessor died, and, more than two years after the period for presenting claims had expired, the tenants sustained loss under the terms of the covenant.  It was held that the claim, though not one upon which an action could have been brought in the lifetime of the deceased, was nevertheless a "claim," within the meaning of the Probate Code, and was barred because not presented.  In that case

the language above quoted from Fallon v. Butler, supra, was commented upon as follows:

"Literally understood, perhaps, this would exclude from the meaning of the word 'claims' all demands of every kind which did not fall due until after the death of the decedent, even though a money judgment might be rendered upon them after they should become due; and it would follow that claims upon promissory notes and other contracts for the direct payment of money not due until after the death of the testator need not be presented to the executor for allowance. It will hardly be contended that this was the intention of the learned justice who wrote the opinion in that case. Near the close of the opinion, however, the intention of the court is expressed more precisely as follows: 'In the use of the term "claims" it (the Legislature) intended to embrace only such demands or liabilities as might by action be reduced to simple money judgments, and to leave the enforcement of specific liens and equitable rights to the ordinary proceedings in the district courts.' This expresses all that could have been intended as to the meaning of the word 'claims.' Whether the claims were due, not due, or contingent must have been considered immaterial to the decision."

This opinion was filed in November, 1892, so that when the quotation from Fallon v. Butler, supra, was first cited with approval by this court in April, 1893, in Purdin v. Archer, supra, such quotation was no longer to be taken literally as an exposition of the law of California. In Morrow v. Barker, 119 Cal. 65, 51 Pac. 12, the court said:

"Section 1493 of the Code of Civil Procedure declares that all claims arising upon contract (as does the one under consideration), whether the same be due [not due] or contingent, must be presented within the time limited in the notice, and any claim not so presented is barred forever. Here is a statute of limitations. The holder of no claim is excepted from its disability, saving him alone who has been absent from the state. A court is not authorized to make an exception to relieve from hardship or to aid apparent equities. Tynan v. Walker, 35 Cal. 640, 95 Am. Dec. 152; Sichel v. Carillo, 42 Cal. 499. As was said in Estate of Hildebrandt, 92 Cal. 436, 28 Pac. 486; 'The statute is imperative and applies to all claims arising upon contracts. If the effect of it is

to cause a loss or work a wrong in some particular case, that is a matter for the consideration of the Legislature and not the courts.' "

See, also, Fratt v. Hunt, 108 Cal. 288, 41 Pac. 12; Morse v. Steele, 149 Cal. 303, 86 Pac. 693; Church, Probate Law & Practice, pp. 705, 733.

Hence it is entirely clear that under the California decisions, and we think under our statute, it is not in all cases essential that "claims," within the meaning of the Probate Code, must be such as would have sustained an action during the lifetime of the decedent. In the case In re Estate of Jacobs, 119 Iowa, 176, 93 N. W. 94, it was held, under a statute similar to our section 544, Pol. Code, that the claim of the county was barred because not presented to the administrator.

[2] But it is argued that this estate should be impressed with a trust in favor of Meade county, and, because this action is equitable in form, the necessity for the presentation of the claim to the administrator is dispensed with. This contention has likewise been disposed of adversely in California, and we think correctly. In McGrath v. Carroll, 110 Cal. 79, 42 Pac. 466, the court said:

"Lathrop v. Bampton, supra [31 Cal. 24, 89 Am. Dec. 141], holds that equity will enforce a trust against the personal representatives of a deceased trustee, and *without the presentation of a claim against the estate*, when the identical trust property or its product in a new form can be traced into the estate and so into the possession of the representatives. But a beneficiary who is unable to do this must rely on the personal liability of the trustee, and, so relying, has only a claim against the estate which must be duly presented for allowance. But such a claim is still based upon the trust, whatever that may have been. It has its origin in the trust, and depends for its validity upon the legality and sufficiency of the trust. * * * In an express trust, the statute of limitations is not set in motion against the beneficiary during the term of its existence, unless the trustee has in some unequivocal way, with notice to the beneficiary, repudiated the trust. If, during his lifetime, the trustee has not done this, his death will not be held to be such a repudiation. The rights of the beneficiary remain unaffected by this event; his remedies, however, will depend upon his ability or inability to trace the specific trust property. When,

as here, he is obliged to look to the general assets and to present his claim. in the absence of repudiation, the statute of limitations is set in motion from the time of the first publication of the notice to creditors. No action can be brought by the holder of such a claim unless it be first presented. Code Civ. Proc. §§ 1493, 1500."

The same rule applies where the funds, though trust funds, were commingled with other moneys of the deceased. Bemmerly v. Woodward, 124 Cal. 568, 57 Pac. 561. See, also, In re Estate of Dutard, 147 Cal. 253, 81 Pac. 519. Furthermore, while this action is equitable in form, the complaint, aside from the injunctive relief asked for, is based solely upon matters that are purely legal and not equitable in their nature. No question of a trust arises in the present case.

It is entirely clear to us that the liability of the estate of the decedent to reimburse Meade county rests upon an implied contract, sometimes called a quasi contract or constructive contract, but, whatever called, the liability is enforced in actions ex contractu. 9 Cyc. 243; 27 Cyc. 833; Board of Ed. v. Sch. Dist. 23 S. D. 429, 122 N. W. 411.

We are therefore constrained to hold that this liability is a "claim" against the estate of Nezor La Flamme, within the meaning of sections 170 and 178 of the Probate Code, and that, inasmuch as the claim was not presented to the administrator within the time allowed by law, it was barred, and no action can be maintained thereon. Murray v. Johnson, 28 S. D. 571, 134 N. W. 206; Dakota Nat. Bank v. Kleinschmidt, 33 S. D. 132, 144 N. W. 934.

The judgment and order denying a new trial are affirmed.