[Civ. No. 15844. First Dist., Div. Two. Dec. 27, 1954.]

Estate of ABRAHAM L. GUMP, Deceased. DANIEL W. HONE, Appellant, v. ROBERT L. GUMP et al., Respondents.

Daniel W. Hone, in pro. per., Hubert D. Forsyth and Peter L. Levy for Appellant.

Lloyd W. Dinkelspiel, Michael J. Cullen, Heller, Ehrman, White & McAuliffe, Arthur P. Shapro, John D. Costello and John L. Mace for Respondents.

KAUFMAN, J.—This is an appeal by Daniel W. Hone, attorney for executors of the estate of Abraham L. Gump, deceased, from decree of settlement of fourth and final account, and of supplemental account of executors, allowing

compensation for extraordinary services, and of final distribution, of the Superior Court in and for the City and County of San Francisco, and particularly from that portion thereof allowing appellant $10,000 compensation for extraordinary services and decreeing that the executors should withhold $11,338.66 to defray possible tax deficiencies and additional expenses of administration.

Appellant contends that the probate court abused its discretion in allowing only $10,000 for extraordinary services performed during a five-year period, and that he is entitled to $25,000 for extraordinary services rendered from September 1947 to September 1951, and an additional $5,000 for services rendered thereafter. He contends further that it was error to limit withholding by executors to $11,338.66, and that they should have had to withhold sufficient funds to cover the claim of appellant.

Petition for probate of the will of Abraham L. Gump, deceased, was filed September 3, 1947, and letters testamentary were issued September 16, 1947, to Richard Gump and Ralph Simmons. Following a hearing, the decree appealed from was issued November 28 and filed December 3, 1952. The sum of $14,027.14 was awarded as the statutory fee for ordinary services.

The testator was survived by three adult children, Richard, Robert, and Marcella Gump. The holdings in common and preferred stock of S. & G. Gump Company constituted the principal asset of the estate. The will expressed the desire of the testator that the Gump Company's operations be continued and its stock retained by executors and by trustees under the testamentary trust created by the will. The obligations of the estate (excluding two principal legacies) exceeded 90 per cent of its total appraised value.

The sole question on appeal is whether or not a clear abuse of discretion was committed by the trial court in limiting appellant's compensation for extraordinary services to $10,000 and in not requiring the executors to withhold sufficient funds to cover the amount claimed by appellant for such services. He contends that the amount awarded does not even cover his costs, stating that the services required in excess of 1,300 hours' work over a period of five years in dealing with complicated and unusual problems in an estate exceeding one million dollars, that several contested matters were handled which resulted in a saving to the estate of several times the amount claimed.

At the hearing of this matter on October 7, 1952, appellant introduced three affidavits in support of his claim for extraordinary services performed. The probate file was also admitted in evidence.

Appellant's voluminous affidavits (126 pages, legal size) which he contends are descriptive of extraordinary services performed by him, were filed in open court. Respondents had not had an opportunity to examine them until a few moments before the hearing began. In one affidavit appellant summarized what in his opinion were complex problems existing at the outset of the probate proceedings. S. & G. Gump, of which testator had been president for more than 50 years, owned stores in San Francisco, Carmel and Honolulu. Of its 5,600 shares of common stock, 4,064¾ shares were owned by testator, and of its preferred stock of 6,727 shares, testator owned 2,656½ shares. The Gump Company stock was the principal asset of the estate. Other assets sold during administration were testator's residence for $5,000; securities, $75,000; personal property, $13,000. The estate was inventoried and appraised at a little more than $1,000,000. Liabilities, including debts, taxes, administration expenses and specific legacies (with the exception of two principal legacies to testator's son, Richard and the trust) amounted to approximately $995,000.

It was necessary during administration to continue the Gump Company's operations and to retain the estate's stock in the company. To achieve this it was required that sufficient cash be raised to pay a debt of $509,065 owed by the estate to Gump Company. Claims and suit had been filed. This was handled without loss of stock control by the estate. Part of this debt—$415,891.13—was owing by testator on an open book account and a promissory note. Litigation was avoided, and the estate did not have to dispose of its stock to satisfy the claim. Interest was waived, saving the estate $14,901 annually, and the company consented in writing to accept a promissory note without any personal liability of executors or others and without any cash payment on the part of the estate.

A creditor's claim was filed showing that the Gump children were indebted to the company in the sum of $93,174.68. The daughter of testator, Marcella Gump, contested the amount of her indebtedness, and filed a notice of motion to set aside the approval of the claim, which was granted on April 5, 1948. The company filed suit against the executors,

and Marcella filed a complaint in intervention. Appellant conducted negotiations for a year to avoid litigation and to obtain a compromise settlement. He filed a petition for instructions to determine the indebtedness of the children, the amount payable to them under Article Sixth of the will, and to raise sufficient cash to pay said legacies. As a result of his work all matters connected with this claim by the company were settled, contested court hearings on the executors' petitions were avoided, a trial of the company's suit against the executors was avoided, and the executors' responsibilities under Article Sixth of the will were determined. Appellant's affidavit shows work connected with these matters performed on 95 different days from February 9, 1948, through November 4, 1949.

Other services rendered in connection with problems of Marcella Gump were handled by appellant at the executors' request. They were concerned with Article Sixth of the will; her interest as beneficiary under the testamentary trust; her indebtedness to Gump Company; her interest in the Mabel Gump estate of which testator had been a trustee. Miscellaneous claims of Marcella against the executors were settled through negotiations carried on by appellant.

In Exhibit G of the third affidavit, appellant listed services performed in connection with what he described as complicated and difficult federal estate tax problems. Herein are listed items of work performed on 115 different days from September 1947 through February 19, 1952. Described in detail are the negotiations involved in arriving at a valuation of $300 per share of stock for federal estate tax purposes when Internal Revenue agents had indicated that the value might be set as high as $470 per share. Appellant contends that he thereby secured a saving to the estate of between $30,000 and $60,000, and the tax was thus fixed at an amount which the estate was able to pay without losing control of the company.

Compensation for extraordinary services is also claimed in connection with work relating to the California inheritance tax which involved many conferences with the executors, their accountants and the inheritance tax appraiser. An appraisal figure of $150 per share of Gump common stock was agreed upon for inheritance tax purposes. Appellant succeeded in having excluded legacies under Article Sixth of the will, and property previously taxed in the William Gump estate, in arriving at the state inheritance tax.

The affidavits also enumerate in detail the proceedings involved in the sale of stocks of 17 different corporations as well as some Gump Company preferred and common stock. Six petitions and six separate orders and proceedings were required.

Appellant was requested by the executors to examine all matters pertaining to the Mabel Gump trust in order to clear the A. L. Gump estate of liability. This was an *inter-vivos* trust created in 1935. It had been administered by testator for 12 years, during which time he collected income and disbursed moneys for the trust, but kept no books other than a check book. Appellant arranged for an audit, studied the accounts and receipts, and prepared plans whereby distributions not made according to the trust terms were equalized and the estate discharged from liability. Appellant conferred with Marcella's attorney, successfully avoiding a claim being filed by her in regard to trust realty sold in 1945 for $45,000 for which A. L. Gump had failed to file an accounting.

The estate was also cleared of liability for an error of testator in making distribution of the Mabel Gump estate. Appellant succeeded in compromising this claim of more than $2,000 for $500.

Included also in the list of extraordinary services is work with accountants and executors in regard to gift tax returns as well as income tax returns for the five years of administration; nine hearings on sales, four on petitions, and one on a contested motion.

While the closing of an estate is ordinarily a routine matter, appellant says that in this case closing involved nine difficult problems requiring extraordinary services from March 7, 1952 to October 1952, namely: (1) disposition of debt to Gump Company; (2) agreement to determine which legatees were to receive cash and which Gump stock; (3) segregation between principal and income; (4) approval by all parties of final account; (5) tax problems involved in closing; (6) final selection of one of several plans formulated by appellant for assumption of company debt or distribution subject thereto; (7) determination of period for allocating income and principal; (8) apportionment of income between trustees and Richard Gump; (9) determination of whether estate and inheritance taxes would be chargeable to beneficiaries.

A hearing on the final draft of all documents was had on October 7, 1952, at which Attorney George Cronin testified

that he had devoted 77¼ hours to preparing the petition for distribution, that distribution was difficult because many plans were discussed and devised; that tax questions were complicated; that 90 per cent of the estate was subject to creditors' claims; that the principal asset was Gump stock; that claims questions were complicated; that there were various sales of realty and personalty, and that the value of the extraordinary legal services rendered up to September 9, 1951, was $25,000.

The attorney for respondents herein opposed the payment of $25,000 in extraordinary fees at the hearing, contending that the affidavits included reference to many ordinary services, and also because there remained only $21,000 cash available in the estate. He stated also that he knew that appellant received $35,000 in the same period as involved herein from S. & G. Gump Company and had pending against said company a bill for $10,000. This statement was not refuted at the hearing, nor is it denied in appellant's briefs. Respondents maintain that when the fact of appellant's representation of the Gump Company during this period is taken together with the fact that both executors and the other attorney in appellant's firm were directors of the company, it is clear that it would not be possible in many matters to keep separate, services to the company and to the estate, particularly in debt negotiations to which a large part of the extraordinary services herein have been attributed.

Section 910 of the Probate Code provides that attorneys for executors and administrators shall be allowed fees in the same amount as the commissions of executors and administrators, "and such further amount as the court may deem just and reasonable for extraordinary services."

The subject of the wide discretion that may be exercised by the probate court in determination of what is a proper amount for extraordinary services is discussed in the article on Executors and Administrators, 11B California Jurisprudence, section 1056, page 506, where it is said that the probate court "has a large discretion, which is always regulated or controlled by a showing directly made before the court to which the question is committed. It has been said to be difficult for the appellate court to form any satisfactory conclusion upon the subject. When, therefore, the trial court has made its determination, its judgment will be interfered with on appeal only when a plain abuse of discretion has occurred. In other words, the appellate court must plainly see and be able to

say that the order is an abuse of discretion—one far out of proportion to the value of the services rendered.''

The same section of the above article then points out that the court ''is not bound to fix the amount of the fee in accordance with the opinions of experts learned in the law, and should temper such testimony with the court's own knowledge and judgment; though such opinion evidence is always admissible by way of assisting the court in arriving at a conclusion. In fact, it has been observed, evidence of a professional nature is not necessary. The court of its own knowledge and experience may determine what is a reasonable fee.''

We agree with appellant that the general nature of the services performed which the executors listed as extraordinary services in their fourth and final report, and for which they requested the court to allow appellant ''such reasonable compensation as this court may deem just'' were extraordinary. The probate court found all allegations in that report to be true. However, the trial court was not bound by the conclusions in appellant's affidavits referring to the great difficulty and complicated nature of the legal work performed or the number of hours required to do the work. It was for the trial court to determine the nature and quality of the work and the time required to perform it.

Appellant relies upon the case of *Berry* v. *Chaplin*, 74 Cal. App.2d 669 [169 P.2d 453], in which an allowance of attorney's fees in the sum of $5,000 was reversed as unreasonably small. The facts of that case are not at all similar to the case before us and it is not here in point. That case stated the general rule that ''in a legal sense discretion is abused whenever in the exercise of its discretion the court exceeds the bounds of reason, all of the circumstances before it being considered.''

 An examination of the record herein does not impress us as presenting any unusual questions of law for counsel to solve nor was any trial conducted in the present case. There was but one contested motion. It is true that there was a great deal of work in negotiating with S. & G. Gump Company, the principal debtor, but as noted earlier, appellant was an attorney for that company. The executors as directors of that company, played an important part in those negotiations, and therefore appellant's efforts might well have been considered by the court below as less arduous than would have been the case if there was the normal debtor-creditor relationship be-

tween the estate and the creditor. The court might well have inferred that the parties were cooperating in an attempt to work out a mutually beneficial arrangement.

The trial court could also take cognizance of the fact that there was only $21,000 available cash remaining in the estate, as well as the fact that one of the principal beneficiaries under the will had offered to accept stock instead of cash in order that the estate might be settled.

Appellant cites numerous cases from this jurisdiction concerned with abuse of discretion which are not particularly applicable here, since they are not concerned with fixing fees for extraordinary services in probate proceedings. We deem it unnecessary to comment on the cases collected from other jurisdictions by appellant with relation to attorney's fees, for the rule is well established in this state that the probate court's determination of the matter will not be disturbed except for a clear abuse of discretion, and that such discretion is very wide, although it is a legal discretion. (*Estate of Parker,* 186 Cal. 671 [200 P. 620] ; *Estate of Durham,* 108 Cal.App.2d 148 [238 P.2d 1057] ; *Estate of Neff,* 56 Cal.App.2d 728 [133 P.2d 413] ; *Estate of Iser,* 52 Cal.App. 405 [198 P. 1014] ; see *Estate of Merritt,* 98 Cal.App.2d 70, 76-77 [219 P.2d 40] for concise discussion of this subject.)

It is our view that the decree allowing the extra compensation finds support in the record before us and that no abuse of discretion on the part of the trial court is shown.

Decree affirmed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied January 26, 1955, and appellant's petition for a hearing by the Supreme Court was denied February 24, 1955. Schauer, J., was of the opinion that the petition should be granted.