209 Cal.App.3d 744 (1989)
257 Cal. Rptr. 566
Estate of SALLY ANN BAUM, Deceased.
JOHN B. MOLINARI, as Administrator, etc., Petitioner and Respondent,
v.
ROBERT LYLE et al., Objectors and Appellants; FRANCHETTI & FRANCHETTI, Intervener and Respondent.
Docket No. A036385.
Court of Appeals of California, First District, Division Two.
April 13, 1989.
*746 COUNSEL
David Price Jones and Palmer, Duckworth & Jones for Objectors and Appellants.
No appearance for Petitioner and Respondent.
Michael Franchetti, Tiffany Franchetti and Franchetti & Franchetti for Intervener and Respondent.
[Opinion certified for partial publication.[*]]
OPINION
PETERSON, J.
This is an appeal from an order of the probate court awarding attorney fees for extraordinary services rendered on behalf of a decedent's estate. (See Prob. Code, § 910.) The question on appeal is whether the award was excessive, either because it violated a settlement agreement negotiated by the attorney or because it constituted a manifest abuse of discretion. We affirm the order for extraordinary attorney fees.

I. FACTS
On January 4, 1982, decedent Sally Baum was killed, and her Sausalito home was partially destroyed, by a landslide involving soil from the Waldo Grade portion of Highway 101. Tiffany Franchetti, an attorney, was appointed executrix of the estate pursuant to the terms of a will dated July 16, 1981. Franchetti engaged John Molinari as general counsel to the estate. Appellants Robert and Bradley Lyle, decedent's stepsons, were beneficiaries of the estate under the 1981 will.
In March 1982, Franchetti engaged attorney John Link as counsel to bring an action for the estate arising from the destruction of decedent's home. Link was also engaged, apparently by Franchetti, to pursue a wrongful death action on behalf of decedent's father, James Whittington. *747 Franchetti said she was concerned from the beginning that the matter be brought to an early resolution, due in large part to the advanced age of Whittington.
In September 1982, Link filed a complaint (Super. Ct., Marin County, No. 109571) naming as defendants the State of California, the County of Marin, and the City of Sausalito. It set forth two wrongful death causes of action on behalf of Whittington ("negligence" and "dangerous condition of public property"), and an inverse condemnation cause of action on behalf of Franchetti as executor. The state, represented by attorney Richard Rypinski, threatened to demur. Link and Rypinski then agreed to expedite resolution of the action for inverse condemnation, by pursuing it to early conclusion while holding the tort claims in abeyance.
On July 6, 1983, an agent for the state supplied Link with an appraisal summary which valued the estate's real property at $250,000. The agent suggested that a settlement might be achieved on the basis of that evaluation. Link observed that any settlement would also have to include sums for damage to decedent's personal property and for attorney fees. He consulted with Franchetti, who felt that the state's appraisal of the real property was too low. The offer was not pursued.
At a trial setting conference in July or August, the court scheduled the trial for December 12, 1983. The court selected this date at the state's urging, although it was the latest available date and one on which Link was already scheduled to try another case. Link advised Franchetti of his apparent unavailability to try the case on the December date. Franchetti decided to take over the case herself in order to bring it to trial on the scheduled date, to secure more favorable appraisals than the one Link had obtained, and to restore the wrongful death claims in order to enhance the case's overall value. Accordingly, she substituted herself in Link's place as counsel for the estate. She resigned as executor, and in her place the court appointed John Molinari as administrator.
A flurry of motions by both sides followed. The court granted Franchetti's motions to consolidate the two actions and for leave to amend the inverse condemnation complaint to add new parties and theories. The court also granted the state's request to remove the case from the trial calendar, and sustained a demurrer to a new cause of action seeking an award of punitive damages against individual state employees. Meanwhile, Franchetti propounded written discovery and took various other steps to prepare for trial.
In or around April 1984, Franchetti successfully moved for a preferential trial setting and obtained a trial date in July. After the hearing on the *748 motion, Rypinski told Franchetti that the case seemed "settleable." Further settlement feelers followed, as did another wave of discovery from Franchetti. On June 8, 1984, Rypinski and Franchetti reached a tentative agreement to settle all claims against the state, both wrongful death and property damage, for an aggregate sum of $550,000. This agreement followed a meeting in which Franchetti and Rypinski exchanged views as to what dollar amounts they felt each could prove for the various items of damage to which the claimants would be entitled if liability were established. Franchetti asserted that she could prove damage to real property totalling $325,000, while Rypinski's corresponding number was $225,000. At one point Rypinski allotted a figure of $100,000 as the estate's attorney fees. Franchetti testified that for her own purposes of calculation she put down $75,000 for fees, and transferred the $25,000 difference to the state's estimate of the real estate damages in order to bring that estimate closer to her own. She indicated that both she and Rypinski were "very loose" in the figures they exchanged. The state insisted that the final agreement should reflect a "lump sum" settlement with no allocation of individual elements.
Meanwhile, on May 14, 1984, Molinari as administrator petitioned the probate court for authority to enter into a contingency fee agreement with Franchetti's law firm, respondent Franchetti & Franchetti. The agreement provided that, from any recovery, the attorneys would first be paid costs they had advanced; and would then receive 25 to 40 percent of the remainder, depending on whether the case went to trial and whether attorney fees were paid by a defendant. This agreement was identical to the one Franchetti had made with Link while she was executor and he was attorney. Appellants and five other beneficiaries objected to the petition. At that time, their objection was that no fee should be allowed which would reduce the estate's net recovery, after fees, below the $250,000 which was initially offered by the state.
On June 13, 1984, Molinari as administrator petitioned the probate court for authority to compromise the estate's claim against the state in exchange for $505,000. (Of the $550,000 lump sum, $45,000 had been allocated to the wrongful death claim.) Appellants and other beneficiaries objected on the grounds that any settlement should insure (1) that the estate receive a net recovery at least equal to the state's initial settlement offer, and (2) that any fees due to attorney Link for his services be dealt with so that the estate would not be exposed to a later claim by him.
After several continuances, both petitions came on for hearing on June 26, 1984, before Commissioner Martin. Counsel for the appellants said there was no objection to "the total amount" of the settlement. He said it had already been agreed to first determine whether to approve the $505,000 *749 as "the overall fair settlement," and then decide "what was a reasonable attorney fees [sic]." The court indicated that was also its understanding, and counsel for the estate agreed to proceed in that manner. A month later, by stipulation of all parties, the court entered an order granting the petition for authority to compromise the claim.
In September 1984, the court granted leave to respondent Franchetti & Franchetti to formally intervene in the proceedings. There followed some two years of hearings, in which was taken the testimony of Franchetti, Link, Rypinski, Robert Lyle, and several others concerning the history of the litigation and the participants' dealings with each other, as well as custom and practice of attorneys in the handling of inverse condemnation cases. Finally, on August 21, 1986, the court entered its order awarding respondent the sum of $147,125 as reasonable attorney fees, plus costs and interest. This appeal followed.[1]

II. CONTENTIONS ON APPEAL
Appellants' contentions appear to fall into three overlapping categories. The first consists of variations on the theme that the settlement agreement between the state and the estate effected a binding determination of respondent's fees, precluding a fee larger than $75,000 or, at most, $100,000. Next are allegations of various ethical violations which should bar or reduce the fee. Last are assertions that the trial court abused its discretion because the circumstances did not warrant a fee of $147,125.

III. SETTLEMENT AS BINDING DETERMINATION

A. Contract or Judgment

(1a) Appellants first contend that respondent's fee was "finally concluded during the settlement negotiations," and that once the settlement was finalized the issue of fees "could not be re-opened." They cite general authorities to the effect that a settlement agreement is a contract with "the attributes of a judgment," which "is decisive of the rights of the parties and serves to bar reopening of the issues settled." (Gorman v. Holte (1985) 164 Cal. App.3d 984, 988 [211 Cal. Rptr. 34]; see Folsom v. Butte County Assn. of Governments (1982) 32 Cal.3d 668, 677 [186 Cal. Rptr. 589, 652 P.2d 437].) However, these authorities are inapplicable to the present case for several reasons. (2) First, "a compromise can only affect the rights of the parties thereto or those in privity with them." (Holbrook v. Telesio (1964) 225 *750 Cal. App.2d 152, 155 [37 Cal. Rptr. 153].) (1b) Franchetti was not a party to the agreement. (See Setzer v. All Steel Engines, Inc. (1959) 169 Cal. App.2d 706, 712 [338 P.2d 18] [recital in agreement between client and adversary did not bind client in attorney's action to recover contingency fee; "the controversy here is not `between the parties' to the contract"].) Appellants make no attempt to demonstrate that Franchetti was in privity with a party. She might theoretically be estopped by some element of her conduct in negotiating an agreement on her principal's behalf; however, there is no indication of such conduct here; and appellants disclaim any reliance on "traditional estoppel."
Assuming, arguendo, that the parties to the settlement agreement had the power to determine respondent's entitlement to attorney fees, there is no indication that they attempted to do so. The agreement merely provides that a lump sum will be paid to the estate in exchange for a complete release from all claims and demands, including claims for attorney fees. The fact that attorney fees were discussed during negotiations as a component of recoverable damages does not make those discussions a part of the contract. Indeed, the state's attorney testified that he and Franchetti never agreed upon a specific amount for legal fees. Instead the state specifically insisted, for its own reasons, that the plaintiffs agree to accept "a single bag of money."
Even if the parties to the agreement had been empowered to determine respondent's fees and had attempted to do so, such an attempt would be subject to the paramount power of the probate court to determine the compensation to be paid for extraordinary legal services. Probate Code section 910 provides in part that attorneys rendering extraordinary services shall be allowed out of the estate such amount "as the court may deem just and reasonable." Any settlement agreement between the estate's administrator and a third party must be deemed to be made subject to this statute. Therefore, unless the court has already approved an agreement governing attorney fees, the statute necessarily reserves to the court the power to allow a "just and reasonable" amount.
Here the parties complicated the matter somewhat by stipulating that the settlement agreement should be approved. If it were established that the agreement covered attorney fees, it might follow that the court's approval of the agreement bound respondent to accept the agreed amount. This construction of the facts seems implausible, however, given that counsel for objectors continued to insist after approval of the settlement that the key issue before the court was the "reasonable" fee to be allowed.
Appellants have failed to demonstrate that respondent's fees were limited by the settlement agreement under general principles of contract or of compromise and settlement.

*751 B. Code of Civil Procedure Section 1036

(3a) Appellants suggest somewhat obliquely that the figure utilized by the state's attorney for attorney fees in the negotiations which led to the settlement agreement is binding on respondent pursuant to section 1036 of the Code of Civil Procedure (section 1036). The factual basis for this argument is Franchetti's testimony concerning the meeting in which she and Rypinski exchanged figures for various items of damage. She testified that Rypinksi asked her the percentage called for in her contingency agreement with the estate, to which she replied 25 percent; that he nonetheless put down $100,000, based on 33 1/3 percent of $300,000; and that in response to this figure, she said "Fine." She also testified that for her own purposes she reduced this figure to $75,000 and added the remaining $25,000 to the state's estimate of the real property damage, in order to bring that figure closer to her own estimate. It is this $75,000 figure which, appellants contend, became binding under section 1036.
The state's attorney, Rypinski, did not remember the specific numbers discussed. His best recollection was that he did not propose a figure for fees but argued that Franchetti's figure, as with her figures for other elements, was too high. He asserted that there was no agreement on separate elements of the settlement, that particular amounts were discussed only "by way of argument," and that the state insisted on a single lump sum settlement.
Section 1036 provides in part that the attorney for a public entity, in settling an inverse condemnation suit, "shall determine and award ... to such plaintiff, as a part of such ... settlement, such sum as will, in the opinion of ... such attorney, reimburse such plaintiff for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of such proceeding."
Appellants' position appears to be that the opinion of the public entity's attorney as to what constitutes a reasonable fee is determinative of the right of the plaintiff's attorney to recover fees. The argument implies three interrelated conceptions of the meaning and effect of section 1036: first, that the statute requires the public entity's attorney to segregate a specific sum out of any settlement for payment directly to the plaintiff's attorneys in full satisfaction of the plaintiff's obligation for fees; second, that the statute obligates the claimant's attorney to accept the amount set by the public entity's attorney, or agreed to by both attorneys, as payment in full of the client's obligations; and third, that the amount so arrived at is binding on the court in a proceeding such as the present one, so that any award of fees in excess of that sum is a manifest abuse of discretion.
*752 None of these propositions is convincingly supported by the statutory language. The literal meaning of the statute, in the context of settlement, is that the attorney for the public entity must be satisfied that the judgment includes an amount sufficient to compensate the claimant for reasonable fees actually incurred. The statute does not by its terms require the public entity's attorney to segregate such an amount or to otherwise ensure that the claimant's attorney is not paid a larger amount by his client.[2] Nor does it purport to override the fee arrangement between attorney and client with the defense attorney's opinion as to a reasonable fee.
As a general rule, a client's obligation to compensate his attorney is distinct from a litigant's liability to an adversary for attorney fees. Ordinarily the former "is left to the agreement, express or implied, of the parties." (Code Civ. Proc., § 1021.) (4) One exception to this rule is Probate Code section 910, under which the present proceedings arose. Code of Civil Procedure section 1036, however, belongs to a distinct class of statutes under which "the successful party in an action is entitled to recover attorneys' fees ... from the adverse party." (1 Witkin, Cal. Procedure (3d ed. 1985) Attorneys, § 129, p. 152; compare 7 Witkin, Cal. Procedure (3d ed. 1985), Judgment, §§ 127, 159, pp. 553-554, 584.) In these statutes, the award is normally "part of the amount recovered by the successful party, to reimburse or indemnify him for fees paid out or incurred by him. An award directly to the attorney, who is not a party to the action, is void." (7, Witkin, Cal. Procedure, op. cit. supra, at p. 554.) At least in general, there is no assurance that an award of fees under one of these statutes will fully reimburse the prevailing party for the sums actually incurred or paid to his attorney. The two issues are separate and distinct.
(3b) Appellants offer no basis for making an exception to this general rule here. They provide no authority for the notion that section 1036 is intended to govern the claimant's obligations toward his attorney. It is true that the court in Salton Bay Marina, Inc. v. Imperial Irrigation Dist. (1985) 172 Cal. App.3d 914, 957 [218 Cal. Rptr. 839] observed that the fee there in question was "not paid by the client but by the public entity." The court's point, however, was that the reasonableness of a fee agreement as between lawyer and client does not necessarily foreclose the contention that the resulting fee is unreasonably large as against the public entity. (Ibid.) The *753 court noted that the Legislature intended in section 1036 to protect the public against unreasonable fee awards, and to that end limited the award to an amount reasonably incurred by the claimant. (Id. at pp. 954-955.) On this ground, the court criticized Glendora Community Redevelopment Agency v. Demeter (1984) 155 Cal. App.3d 465, 479 [202 Cal. Rptr. 389] for relying on criteria more applicable to fee awards rendered against a client. (Salton Bay Marina, Inc. v. Imperial Irrigation Dist., supra, 172 Cal. App.3d at p. 957.) Far from indicating that the award under section 1036 is binding as between attorney and client, this reasoning suggests that two different standards may well apply, such that what is a reasonable fee between attorney and client may not be a reasonable fee award against the public entity defendant.
The public policy noted in Salton Bay Marina is not threatened by such an interpretation. There the matter was resolved by judgment, and the public interest was protected by a judicial determination of a reasonable fee to be assessed in addition to other compensable damages. Here the case was resolved by a lump sum settlement. Section 1036 required the state's attorney to allow a total sum which included an amount sufficient in his opinion to reimburse the plaintiff for reasonable fees actually incurred. If this requirement was satisfied (as we presume to be the case in the absence of contrary evidence), then once the settlement became final the legislative intent ascribed by Salton Bay Marina to section 1036, of protecting the public from unreasonable fee awards, was achieved. The public policy noted in Salton Bay Marina requires only that the total burden on the public entity not exceed a sum sufficient to reimburse reasonable attorney fees as judged by an objective standard from the point of view of the public entity. Once that goal is achieved, the allocation of proceeds between claimant and attorney cannot further burden the public fisc.
In the absence of legal support for their position, appellants sought to prove as a fact that the fee figure used in settlement negotiations was binding on Franchetti. This was attempted through opinion testimony by other attorneys that the claimant's attorney in an inverse condemnation case should negotiate a specific fee with the public entity and accept that sum in full satisfaction of the client's obligation for fees. Attorney Link further testified that, if the attorneys are unable to settle the amount of fees, the case may be settled in other respects and the court may be asked to determine fees. This testimony may have been probative of the custom and practice generally followed in such cases, but did not compel acceptance of appellants' position. The trial court was not obligated to find that the custom had the force of law or otherwise governed the relations between the parties here. Moreover, this is another objection which seems to go to the *754 validity of the settlement agreement, to which appellants waived all objections. (See fn. 2, ante.)
(5) Nor do appellants succeed in demonstrating that section 1036 had any binding effect on the probate court. That court had the power under section 910 of the Probate Code to allow a just and reasonable attorney fee for extraordinary services. That statute predated by 40 years the predecessor to Code of Civil Procedure section 1036. (1931 Stats., ch. 281, § 910, p. 647; see former Code Civ. Proc., § 1246.3, 1971 Stats., ch. 1574, § 1, p. 3154.) Nothing presented by appellants suggests that the Legislature intended the later enactment to limit the earlier by empowering the attorney for a public entity to displace the probate court in its role as arbiter of attorney fees in the administration of estates. Section 910 has been held to confer on the probate court a "large" and "very wide" discretion. (Estate of Gump (1954) 129 Cal. App.2d 783, 788, 790 [277 P.2d 886]; see Estate of Downing (1982) 134 Cal. App.3d 256, 266 [184 Cal. Rptr. 511].) While the court may undoubtedly consider the opinion of the public entity's attorney in exercising its discretion, nothing before us suggests that the court may be compelled to accept that opinion as determinative of the estate's obligations to its attorneys.

IV., V.[*]
.... .... .... .... .... .

VI. DISPOSITION
The order awarding attorney fees is affirmed.
Kline, P.J., and Smith, J., concurred.
NOTES
[*] Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of sections IV and V.
[1] The order is appealable (Prob. Code, § 1297, subd. (l); former Prob. Code, § 1240, subd. (m)), and the appeal is timely (Cal. Rules of Court, rule 2(a)).
[2] Whatever the obligations of the state's attorney may have been, in this case he did not in fact segregate or otherwise earmark any particular sum for attorney fees, but instead insisted on an undifferentiated lump sum settlement. Despite presumptive knowledge of this fact, appellants stipulated to the approval of the settlement agreement. Even assuming, arguendo, that the public entity attorney was required to make a binding allocation of fees under section 1036, an interpretation of the statute we do not adopt, his failure to do so would have flawed the settlement agreement itself, necessitating timely objection thereto. The absence of such an objection would presumably have effected a waiver.
[*] See footnote, ante, page 744.